AH LOU KOA, Plaintiff-Appellant,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee.

No. 219, Docket 74–1306.

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1975.

Decided March 27, 1975.

Herbert Zelenko, New York City (Abraham E. Freedman, New York City, on the brief), for plaintiff-appellant.

Stephen K. Carr, New York City (Haight, Gardner, Poor & Havens, New York City, on the brief, John A. Anduiza, New York City, of counsel), for defendant-appellee.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, dismiss-

ing plaintiff's complaint after a jury trial. The plaintiff, Ah Lou Koa, is a seaman seeking damages for personal injuries suffered on board the S.S. Export Champion, owned by the defendant. The court dismissed a cause of action for negligence under the Jones Act, 46 U.S.C. § 688 (1970), and the jury found for the defendant on a second cause of action for unseaworthiness under general maritime law. We reverse.

## I.

Plaintiff was employed as a messman aboard the defendant's ship. Part of his job was to prepare the evening meal for the crew. At about 4 P.M. on January 18, 1971, the plaintiff began to dish out salad from a large serving bowl into several individual bowls. The weather was rough and he eventually fell and slid across the room, with the impact causing knee injuries.

There are conflicts in the testimony as to the cause of plaintiff's fall, the condition of the deck at the time of the accident, and the role of plaintiff's superior officers, the chief steward and the cook, who were seated in the room when the accident occurred. Plaintiff testified that his fall was caused by a heavy roll of the ship and a rush of water under his feet. He claimed that the deck was wet because water generally overflowed from a nearby drinking fountain in rough weather. Plaintiff also testified that although the chief steward and the cook were present, neither told him to stop working until the rough weather subsided.

The defense introduced testimony that the deck was dry at the time of the accident. It also introduced a written statement, signed by both the plaintiff and his brother, to the effect that the deck was "dry and clean" when he fell. According to the statement the subscribers to the statement had read the statement before signing it. The investigator who took the statement also testified that he had read the statement to Koa and his brother. Koa denied that the statement had been read to him. Finally, the defense introduced evidence that the chief steward and cook had indeed warned the plaintiff to stop working on account of the rough weather.

After unsuccessfully objecting to the introduction of the written statement, counsel for the plaintiff attacked its accuracy on the ground that the plaintiff and his brother, both of Chinese extraction, could not read and had a great deal of difficulty understanding English. Counsel argued, in effect, that they had been overreached by John A. Anduiza, the investigator who took the statement on behalf of the defendant when the vessel arrived in New York.

At the conclusion of the plaintiff's case, the court dismissed the negligence count of the complaint on the ground that even if the deck was wet, plaintiff had failed to establish that the defendant, or its employees, had notice of the dangerous condition. After the defendant had presented its case, the court submitted the remaining count of unseaworthiness to the jury, which found for the defendant.

## II.

Appellant claims that in his charge to the jury, the district judge exceeded the bounds of fair comment on the evidence.

■ A major issue in the trial was the accuracy of the statement signed by the appellant. If the jury believed that the appellant had indeed told Anduiza that the deck was dry, not only would it be likely to reject his trial testimony that the deck was wet and therefore unseaworthy but it might also dismiss his entire testimony as unreliable. The jury's attitude toward Anduiza and his role in the case was certainly crucial to its determination of this issue. In his summation, counsel for the appellant argued, based on evidence in the record, that Anduiza had been working as an investigator for the company and that his purpose was not to protect the seaman. Based on this and the evidence of appellant's problems with English, counsel asked the jury to conclude that appellant

did not tell Anduiza or knowingly sign a statement that the deck was dry at the time of the accident.

In his charge to the jury, the district judge made several comments which could only have left the impression that the judge viewed appellant's arguments as implausible. He stated flatly that Anduiza was "not obliged to go up there to protect the defendant."[1] Shortly thereafter, the judge expressed his disbelief of the notion that Anduiza and the company would act less than honorably:

"You would assume from that (plaintiff's argument) that everyone is a crook and he is going to go up there to get a statement to trip him up so he can hurt him in some way. Sailors sail on these ships all the time and they sail on them from year to year, and the company needs sailors as much as sailors need the company. Do you think a company would last very much in business if they went around taking statements from people and in effect putting them out of court if they had a proper claim. I suppose it could happen, I don't know."

The court pointed out that Anduiza had afterwards become a lawyer, and suggested that it was unlikely that he would have done anything unethical at the time of the investigation to prejudice his future career.[2] And finally, the court emphasized the testimony of the cook and the steward, favorable to the defendant, by noting that they came from the same union hall as the plaintiff,[3] an observation not based on the record.

■■■ In the federal courts, the trial judge in a jury trial does not act simply as a moderator. He is expected to summarize the evidence for the jury, and to comment on it, if he chooses. However, there are limitations to the judge's right to comment. See Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). The judge is not to impose his own opinions on the jury, nor is he to assume the role of an advocate by making arguments to the jury. United States v. Tourine, 428 F.2d 865, 869 (2d Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971); United States v. Sowards, 339 F.2d 401, 403 (10th Cir. 1964); Buchanan v. United States, 244 F.2d 916, 920 (6th Cir. 1957); 9 C.A. Wright and A.R. Miller, Federal Practice and Procedure: Civil, § 2557 (1971). He is certainly not permitted to add to the facts, or to present his own theories when they are not strongly grounded in the evidence. Quercia v. United States, supra, 289 U.S. at 470, 53 S.Ct. 698; United States v. Cisneros, 491 F.2d 1068, 1074–75 (5th Cir. 1974).

---

1. The comment was made in the following context:

"It's very well in argument, for example, to say well, now, this fellow went up there to take a statement from you, do you think he went up there to protect the defendant? *He was not obliged to go up there to protect the defendant.* He was obliged by the company to go there and make an investigation. Is there anything sinister or nefarious about a company trying, to protect his rights in getting statements after the accident happened when the memories are fresh *so that they* can have accounts of it?" (emphasis added)

2. The judge's comments on Anduiza's career were as follows:

"On the other side of the coin, Anduiza, he was an investigator, he has since become a lawyer. Well, this is a fact for you to consider, whether a fellow who's got a career to go on and is now presently a lawyer is going to go around and do [t]his kind of thing, put words into mouths of somebody who never said that at all. These are judgments for you to make."

3. The judge said:

"The interest of every witness in the case, including the plaintiff, is of interest to you in evaluating the testimony. You look into the background of each of the witnesses, determine what their position is, and then based upon your analysis of it, you come to a judgment as to how much you believe and what you believe.

"*Of course, the cook and the steward are fellow employees of the plaintiff. They come out of the same union hall.* So that you consider their interest as company employees and also their interest as fellow colleagues who work with him." (emphasis added)

The district judge's comments on Anduiza's role in procuring the written statement and on the probable posture of the company in such situations amounted to an argument that the plaintiff's account of the incident was far-fetched and false. The court's statement that the steward and cook came from the same union hall as the plaintiff called on the jury to credit their testimony based on an inference from facts outside the record. We hold that these statements were beyond the realm of permissible comment on the evidence.

The appellee argues that the trial judge's charge was fair because he stated several times that the jury and not the court must resolve questions of credibility. It is well-settled, however, that such an instruction is not necessarily sufficient to cure an improper charge. Querica v. United States, supra, 289 U.S. at 472, 53 S.Ct. 698; United States v. Tourine, supra, 428 F.2d at 870; Gordon Mailloux Enterprises, Inc. v. Firemen's Ins. Co., 366 F.2d 740, 742–43 & n.3 (9th Cir. 1966). Here the district judge made it quite clear that in his opinion Anduiza was telling the truth about the statement. He argued that point to the jury in several different forms. He also reached outside the record for facts to support the credibility of other defense witnesses. The instruction that it was for the jury to resolve questions of credibility could not undo the prejudicial effect of such comments.

### III.

■ Appellant also argues that the judgment should be reversed and a new trial ordered because the district judge erred in dismissing his negligence claim. He claims that even if there was insufficient evidence to show that his superiors had notice of water on the deck, there was ample evidence to show that they had notice of the rough weather. Therefore, if the jury believed the plaintiff that there had been no warning from them, it could have found negligence regardless of whether there was water on the deck.

We agree that there was sufficient evidence to go to the jury on the issue of negligence. The plaintiff presented two theories of negligence, one based on water on the deck and the other based on the rough weather. Even if there was insufficient evidence to support the first theory, there was clearly ample evidence to support the second. On the evidence presented, the plaintiff was entitled to a jury finding on the issue of negligence.

Reversed and remanded.