UNITED STATES of America, Appellee,

v.

Vincent DiNAPOLI, Appellant.

No. 1132, Docket 77–1052.

United States Court of Appeals,
Second Circuit.

Argued May 18, 1977.

Decided June 20, 1977.

Douglas K. Mansfield, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., E.D.N.Y., Bernard J. Fried, Gary A. Woodfield, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for appellee.

Harold W. Dublirer, Dublirer, Haydon & Straci, New York City, for appellant.

Before MOORE, SMITH and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Vincent DiNapoli from a judgment of conviction entered against him in the United States District Court for the Eastern District of New York on January 14, 1977 after a jury trial before Judge Mark A. Costantino. DiNapoli was convicted of conspiring to influence unlawfully by bribery the outcome of horse races at Pocono Downs, Pennsylvania in violation of 18 U.S.C. §§ 224. He was sentenced to a term of three years to be served by three months of weekend imprisonment and the balance on probation. He was also fined $1,000.

The testimony on trial established that DiNapoli and James Santamaria met at the Long Island home of Salvatore Montello to confirm a plan to fix races with the connivance of crooked jockeys at Pocono Downs. DiNapoli agreed to advance $5,000 to finance the venture. For four successive days from October 14 through 17, 1970 meetings took place in Montello's hotel room in Wilkes Barre to fix each evening's "Big Exacta" races. This type of wager required the bettor to have the prescience to predict the first and second (win and place) horses in the seventh and eighth races for the evening. The conspirators determined the favorites in these races and then bribed the jockeys $200 to $500 apiece to ensure that their mounts did not run as fast as the experts and the spectators at the sporting event anticipated. The conspirators attended the track each evening and purchased all possible combinations of the Big Exacta excluding the favorites whose jockeys were bribed. Thus the conspirators had arranged matters not only so they could not lose but also so longshot winners would produce a generous payoff.[1] The conspirators naturally won on all four nights, cashing tickets through associates, one of whom was appellant's father, for each night in the sums of $28,090.90, $5,691.80, $8,504.20 and $48,536.60 in succession.

The evidence against DiNapoli was overwhelming. Salvatore Montello was the government's principal witness and related the entire plan, the daily meetings, the bribes and the splitting of the spoils. In addition, two jockeys testified to DiNapoli's presence in the hotel room and participation in the discussion of the amount of their payment. DiNapoli, according to the testimony of one jockey, had complained on one occasion that the amount being paid to a jockey was too high. The testimony of the jockeys was largely uncontradicted.

■ The defendant called as witnesses the defendant's father, a Roman Catholic priest and the brother and the wife of the government witness Salvatore Montello. The defense wished to introduce testimony through Montello's wife that Montello, who had a criminal record and was being protected under the Federal Witness Protection Program, was in fact biased against DiNapoli and would frame people to stay out of jail. Judge Costantino refused to permit Montello's wife to testify as to her husband's bias against the appellant because the defense, which had cross-examined Montello for almost a full day, had not

---

1. There is no indication at all and no charge by the government that the horses involved had any knowledge of, much less participated except unwittingly in the shenanigans involved.

laid a foundation for the introduction of such evidence by bringing the matter of his alleged hostility toward the appellant to Montello's attention. On cross-examination Montello had stated that the only reason he decided to cooperate with the government was that attempts had been made on his life. Not only did counsel for DiNapoli have ample opportunity to examine Montello on this issue but, then knowing what Montello's wife's testimony as his witness would be, he had an excellent opportunity for laying a foundation for her testimony on this point. The ruling of the trial judge refusing to permit extrinsic evidence of a prior statement showing bias when the witness was not afforded an opportunity to explain or deny the statement is in accord with Fed.R.Evid. 613(b)[2] and is clearly the law of the circuit.

In *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) we said:

> This Circuit follows the rule, applicable in a number of other Circuits, that a proper foundation must be laid before extrinsic evidence of bias may be introduced. Prior to the proffer of extrinsic evidence, a witness must be provided an opportunity to explain the circumstances suggesting bias.

(Citations omitted.) See Advisory Committee Note to Rule 613(b). The only issue remaining then is whether the district court abused its discretion in not recalling Montello to the stand in order to lay a proper foundation. It is basic of course that the trial court has the discretion to determine exceptions to the normal order of proof. Fed.R.Evid. 611(a); 6 Wigmore, Evidence § 1867 (rev.ed. 1976). We see no abuse here. While appellant urges that the record establishes that counsel made such request, the trial judge in rejecting appellant's motion for a new trial on this very issue considered that he had merely refused to disclose the whereabouts of the protected witness. The record in print does not contradict the trial judge. In any event, it is clear that DiNapoli's counsel had every opportunity initially to lay a proper foundation and, despite his knowledge of the forthcoming testimony of Mrs. Montello, nonetheless inexplicably failed to raise the issue at what was unquestionably the proper time. Moreover, even assuming error on this point, it was harmless. The two jockeys who testified abundantly established that DiNapoli was not at Pocono Downs simply to enjoy the Sport of Kings. He was directly implicated in a crude but effective scheme to corrupt jockeys, was present and participated in their bribery and shared in the resulting loot.

The appellant also urges that the trial court erred in declining to exclude the use for impeachment of his prior state conviction. DiNapoli was convicted in February 1972 in a New York State court of conspiracy in the third degree in violation of N.Y. Penal Law § 105.05, a class A misdemeanor.[3] On March 20, 1972 a judge of the New York Supreme Court issued to appellant a certificate of relief from disabilities pursuant to N.Y. Correction Law § 702. Appellant has argued both below and before this court that evidence of this conviction was not admissible because of Fed.R.Evid. 609(c). That rule provides:

> Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been con-

---

**2.** Fed.R.Evid. 613(b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

**3.** By post-argument letter counsel for appellant raises for the first time that Rule 609(a) prohibits the use of a misdemeanor for impeachment purposes. Since this ground for excluding evidence of the conviction was never presented to the trial court, we will not consider it on appeal. *United States v. Braunig,* 553 F.2d 777, 780 (2d Cir. 1977).

victed of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

The trial court ruled that the New York certificate of relief from disabilities issued to the defendant was not a certificate based on a finding either of defendant's rehabilitation or innocence and therefore was outside the scope of Rule 609(c). We agree.

On its face, the certificate here does not disclose the reasons for its issuance. Defendant never submitted to the district court any finding of the state court on his innocence or his rehabilitation. Appellant argues that the statute provides for the issuance of a certificate only upon a finding of rehabilitation. He relies on Correction Law § 702.2(b) which provides that a certificate should not issue unless "[t]he relief to be granted by the certificate is consistent with the rehabilitation of the first offender . . . ." However, the proper construction of this requirement is that the certificate should be issued when it will be an aid to rehabilitation. It does not require, as appellant contends, a determination that the convict has already been rehabilitated. Governor's Memorandum Approval of L.1966, c. 654 in McKinney's 1966 Session Laws of New York 3003. See also the discussion of the New York statute in both the majority and the dissenting opinions in *Rehman v. I.N.S.,* 544 F.2d 71 (2d Cir. 1976), noted in 45 Fordham L.Rev. 1247 (1977). A New York court has held that, "The granting of a certificate of relief from disabilities in no way eradicates or expunges the underlying conviction." *Da Grossa v. Goodman,* 72 Misc.2d 806, 339 N.Y.S.2d 502, 505 (S.Ct. 1972). In light of this, the advisory committee's note on Rule 609(c) is instructive, "A pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of a conviction has no relevance to an inquiry into character." Thus it is clear and we hold that the certificate of disabilities issued pursuant to N.Y. Correction Law §§ 700 *et seq.* is outside the scope of Fed.R.Evid. 609(c).

 We find appellant's assertion that he was entitled to a hearing on the question of pre-indictment delay to be meritless. See *United States v. Lovasco,* 429 U.S. 884, 97 S.Ct. 233, 50 L.Ed.2d 164 (1977). The alleged prosecutorial misconduct finds no support in the record.

The judgment of conviction is therefore affirmed.