**UNITED STATES of America, Appellee,**

v.

**Margarita CIRO and Fanny Lidia Sloan, Appellants.**

**Nos. 579, 666, Dockets 84–1298, 84–1312.**

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1985.

Decided Jan. 21, 1985.

Richard F. Guay, New York City (Montclare & Guay, Paul D. Montclare, New York City, of counsel), for appellant Margarita Ciro.

Raphael F. Scotto, Brooklyn, N.Y., for appellant Fanny Lidia Sloan.

John J. Gallagher, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, and LUMBARD and KAUFMAN, Circuit Judges.

PER CURIAM:

Margarita Ciro and Fanny Lidia Sloan appeal from judgments of conviction in the United States District Court for the Eastern District of New York, Leonard D. Wexler, J., entered after a jury trial. They were each found guilty of one count of conspiring to distribute cocaine, 21 U.S.C. § 846, and of one count of possessing cocaine with an intent to distribute, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2. We affirm on all counts.

The prosecution presented four witnesses during the five-day trial: three government agents and Juan Caicedo, a participant in the scheme who subsequently entered into a cooperation agreement with the government. Judge Wexler, on the prosecution's motion, excluded evidence of a juvenile adjudication (involving kidnapping and assault with intent to rape) entered a few years earlier against Caicedo. Relying on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), appel-lants contend that this exclusion violated their Sixth Amendment right to confrontation. We disagree. *Davis* is distinguishable on at least two grounds. First, in *Davis* the witness was on probation for his juvenile adjudication at the time of the events at issue, and fear of jeopardizing his probationary status arguably furnished a strong motive to lie. *Id.* at 311, 94 S.Ct. at 1107. The witness here was not on probation and therefore did not have the same motivation to lie. Second, in *Davis* the exclusion left the defense without any substantial evidence with which "to develop the issue of bias properly to the jury." *Id.* at 318, 94 S.Ct. at 1111. Here, by contrast, the defense had ample evidence, absent the juvenile adjudication, with which to impeach the witness' credibility in general and bias in particular. In response to questions put to him on cross-examination, Caicedo admitted that he "free based" cocaine some four times a week and that free basing diminished his ability to recall. He acknowledged that as a result of his agreement with the government he would not be prosecuted for "60, 70 or 80 other deals" in which he had been involved. He was told that because of his cooperation with the government there "might be a possibility" that he would receive a lesser sentence or a sentence under the Youth Corrections Act. And he emphasized that he "didn't know what is going to happen to these [defendants]. And to tell you the truth, I don't care." In short, appellants' ability to cross-examine Caicedo effectively was not substantially impeded by the exclusion of the evidence in question.

■ Appellants also contend that the district court should have admitted evidence of Caicedo's juvenile adjudication pursuant to Fed.R.Evid. 609(d). The exclusion of the witness' juvenile adjudication did not constitute an abuse of discretion. *United States v. Lind*, 542 F.2d 598, 599 (2d Cir. 1976). In light of the ample opportunity for effective cross-examination discussed above, we cannot say that the judge erred in finding that the excluded evidence was not "necessary for a fair determination of

the issue of guilt or innocence." Fed.R. Evid. 609(d).

We therefore conclude that the challenged ruling was not improper. We question, however, whether the government was well advised to press the objection. In view of the other testimony, the additional evidence could hardly have had a significant effect on the jury's assessment of Caicedo's credibility, but the exclusion of the evidence provided defendants with a serious issue for appeal.

 We have considered appellants' other contentions and find them to be without merit. The admission of an incriminatory remark made by Ciro to Caicedo shortly after their arrest was proper because Caicedo was not acting as a government agent at the time. See *United States v. Calder*, 641 F.2d 76, 78–79 (2d Cir.), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981). Ciro's claim that the government "unreasonably and needlessly relied on extensive hearsay evidence" in presenting its case to the grand jury is groundless. See *United States v. Dyman*, 739 F.2d 762, 767 (2d Cir.1984). Although the district court declined to give the requested "hesitate to act" formulation on reasonable doubt, the court's charge, read in its entirety, fairly conveyed to the jury the substance of reasonable doubt. Similarly, the district court did not abuse its discretion in denying Ciro's motion for severance. See *United States v. Siegel*, 717 F.2d 9, 22 (2d Cir.1983). Sloan argues that the district court erred in permitting the government to introduce the small quantity of cocaine discovered in her possession at the time of her arrest. The evidence was properly admitted to rebut the impression defense counsel apparently tried to create, in cross-examining Detective Annarella, the undercover buyer, that Sloan might not have known that her conversation with Annarella was about cocaine. See *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984). Finally, Sloan assigns error to the admission of her address book, which served to link her with Ciro and thus the conspiracy. We agree with the district court's determination that the book, found in Sloan's pocketbook, was lawfully seized incident to arrest. See *United States v. Barlin*, 686 F.2d 81, 87 (2d Cir.1982) ("lady's handbag is the most likely place for a woman to conceal a weapon").

Affirmed.