Lee D. ZINMAN, Plaintiff–Appellant,

v.

BLACK & DECKER (U.S.), INC.,
Defendant–Appellee.

No. 539, Docket 92–6167.

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1992.

Decided Jan. 12, 1993.

Michael J. Izzo, New York City (Cozen and O'Connor, Kenneth A. Bloom, of counsel), for plaintiff-appellant.

George J. Koelzer, New York City (Ober, Kaler, Grimes & Shriver, Clarkson S. Fisher, Jr., Gordon Hwang, of counsel), for defendant-appellee.

Before: LUMBARD, FEINBERG, and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Lee D. Zinman appeals from a June 10, 1992 judgment entered on a jury verdict in the Southern District of New York, Conner, J., finding Black & Decker (U.S.), Inc. liable for injuries suffered by Zinman and awarding Zinman $11,355.82 in damages.

Zinman argues that: (1) the district court erred in admitting evidence of his 1976 conviction for making a false statement to a government agency; (2) the judge's conduct was so favorable to Black & Decker that it deprived him of a fair trial; and (3) the jury's verdict was internally inconsistent and grossly inadequate. We affirm.

At the time he was injured, Zinman was a 51 year-old podiatrist who specialized in surgery. His tax returns for the five years prior to the year of his accident show that his income, net of business expenses, ranged from a low of $119,807 in 1984 to a high of $211,195 in 1987.

On April 29, 1989, Zinman was working on his boat at a boatyard in Stamford, Connecticut. While using a Black & Decker Model 6126 Angle Polisher, Zinman's finger accidentally contacted the "polishing bonnet," and the tip of his left index finger was severed. Zinman immediately went to a hospital where a surgeon amputated a portion of the injured finger.

Zinman claims that several months after the injury, pain in his finger made it impossible for him to perform surgical and other podiatric procedures, and in June 1989, he stopped practicing podiatry. He obtained other employment, first as an insurance salesman for Monarch Life Insurance Company, and then as a heavy equipment salesman for a company owned by his brother. During 1991, Zinman earned $34,000 in commissions, and in 1992 he received a fixed salary of $50,000.

Zinman brought this diversity action against Black & Decker, alleging negligence, strict products liability, and breach of warranty. He claimed that the polisher was defective in design and manufacture and for failure to include an adequate warning. He demanded compensatory and punitive damages.

Trial commenced on May 11, 1992. Zinman testified about his use of the polisher, the circumstances of the accident, and the effects of his injury. Dr. Martin Posner gave his expert opinion that Zinman was permanently disabled from performing podiatric surgery. Fredric Blum, an expert in mechanical engineering, testified that the polisher was defectively designed and that Black & Decker had failed to adequately warn of the dangers in its use. Dr. Anna Dutka, an expert in labor market and health economics, gave her opinion that

Zinman's net loss of past income was $638,-828, and his net loss of future earnings, before reduction to present value, was $7,090,050.

Black & Decker called two of its employees, William Saffell and Gary Rosenfield, and an engineering expert, John Jones, Jr.

On Friday, May 15, during Jones's testimony, the judge called counsel into his robing room and announced that he had been informed that Zinman had a prior conviction for Medicare fraud. The judge explained that he had mentioned Zinman's name to his wife, who then mentioned it to her sister, who in turn recalled that Zinman had been convicted of Medicare fraud in the late 1970s.[1] The judge had obtained a docket sheet which indicated that on December 22, 1975, Zinman pled guilty in the Southern District, Knapp, *J.*, to an information which charged him with making false statements to an agency of the United States, in violation of 18 U.S.C. § 1001. Zinman was sentenced to five years imprisonment, all but two months of which was suspended, three years of supervised probation conditioned on his performing community service, and a $10,000 fine.

The judge also disclosed that he had learned that Zinman's license to practice podiatry had been suspended, which suspension was affirmed by the Supreme Court of New York, Appellate Division. *See Zinman v. Ambach,* 60 A.D.2d 731, 401 N.Y.S.2d 307 (3d Dep't 1977).

After disclosing this information, the judge stated:

> There are a number of alternatives confronting us at this juncture. One is to hear argument from you as to whether or not this is admissible. Another is to declare a mistrial to give the plaintiff an opportunity to meet it. Perhaps if there is a retrial, I should recuse myself and have it assigned to another judge because I am in the unexpected position of uncovering evidence useful to one of the parties in the case. It may be that the evidence is inadmissible. I don't know.

---

1. The court's disclosure of Zinman's conviction was a proper exercise of its discretion and "compatible with the very nature of a trial as a

search for truth." *Nix v. Whiteside,* 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986).

After hearing argument on the issue, he ruled that the prior conviction would be admitted. The next day, Black & Decker's counsel telecopied written notice to Zinman's counsel of his intent to offer evidence of Zinman's conviction.

When trial resumed on Monday, May 18, Zinman's counsel presented the court with a memorandum of law opposing admission of the conviction. The court reaffirmed its earlier decision to admit the conviction and ruled that it would exclude evidence of Zinman's law-abiding and community-minded behavior following his conviction. The judge then asked Zinman's counsel, "If you want a mistrial, I'll consider it. Do you want it now, Mr. Izzo?" Counsel replied, "No, sir." Thereafter, Zinman was recalled to the stand and questioned about his conviction. The judge sustained objections to questions posed by Zinman's counsel regarding Zinman's alleged rehabilitation.

The jury answered special interrogatories, finding that: while the polisher was not defective in design, it was defective for failure to include an adequate warning; Zinman was 86% at fault for his injuries; and Zinman suffered $50,000 in past pain and suffering, nothing in future pain and suffering, $18,255 in lost past earnings, and $12,858 in lost future earnings. After reducing the award by the portion of fault found by the jury to have been attributable to Zinman, the court entered judgment against Black & Decker in the amount of $11,355.82.

A. *Admission of Zinman's Conviction*

Zinman contends that the district court erred in admitting his prior conviction because: (1) the court erroneously found that the probative value of admitting the conviction outweighed its prejudicial effect; (2) Zinman was not given sufficient advance notice of Black & Decker's intent to use the conviction; and (3) the court excluded evidence which supported a finding of Zinman's rehabilitation. We believe all of these contentions are without merit, and the district court did not abuse its discretion in admitting Zinman's prior conviction.

*See United States v. Ciro,* 753 F.2d 248, 249 (2d Cir.) (per curiam), *cert. denied,* 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 *and cert. denied,* 471 U.S. 1057, 105 S.Ct. 2122, 85 L.Ed.2d 486 (1985); *United States v. Hawley,* 554 F.2d 50, 53 (2d Cir.1977).

■ Rule 609(b) of the Federal Rules of Evidence bars the use of a conviction more than ten years old to attack a witness's credibility unless "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." We have recognized that Congress intended that convictions over ten years old be admitted "very rarely and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. (93 Stat.) 7051, 7062, *quoted with approval in United States v. Mahler,* 579 F.2d 730, 736 (2d Cir.), *cert. denied,* 439 U.S. 872, 99 S.Ct. 205, 58 L.Ed.2d 184 *and cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).

■ In ruling Zinman's conviction admissible, the court noted that making a false statement to a government agency is a crime akin to perjury, and that Zinman's conviction therefore bore heavily on his credibility. The court recognized that the jury's assessment of Zinman's credibility was highly relevant to several disputed issues in the case, including: whether Zinman's injury made it impossible for him to continue to practice podiatry; whether Zinman had discontinued his practice solely because of the injury; and whether, but for his injury, Zinman intended to continue to practice podiatry until age 70. The court concluded that any resulting prejudice to Zinman was substantially outweighed by the probative value of the evidence.

The district court thus made "an on-the-record determination supported by specific facts and circumstances that the probative value of the evidence substantially outweigh[ed] its prejudicial effect." *Mahler,* 579 F.2d at 736. We think this determination was supported by the record and was well within the district court's discretion.

■ Rule 609(b) also prohibits the admission of convictions more than 10 years old "unless the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." The purpose of the notice requirement is to prevent "unfair surprise" and to give the adverse party the opportunity to prepare for trial. *See United States v. Lopez*, 979 F.2d 1024, 1033 (5th Cir.1992); *accord* H.R.Conf.Rep. No. 1597, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. (93 Stat.) 7098, 7103.

■ We find no merit in Zinman's contention that he did not receive sufficient advance notice of Black & Decker's intent to use the conviction. The district court offered Zinman two opportunities to obtain a mistrial, one after disclosing its knowledge of the conviction on May 15, and one after reaffirming its intent to admit the conviction on May 18. Having declined both offers, Zinman waived any objection to the sufficiency of the notice he received. *See United States v. Pritchard*, 973 F.2d 905, 908 n. 3 (11th Cir.1992) (defendant waived objection to sufficiency of notice where he declined district court's offer of a continuance).

■ Zinman also contends that because there was evidence of his rehabilitation, the conviction should have been excluded pursuant to Rule 609(c)(1), which provides:

> Evidence of a conviction is not admissible under this rule if ... the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year....

Zinman was prepared to offer evidence that following his conviction he had: performed community service at the Mount Vernon Neighborhood Health Center; renewed his podiatrist's registration, which required certification of the absence of unprofessional conduct, incompetence, negligence, conviction of a crime, or other misconduct; been accepted for surgical procedures at Mount Vernon Hospital; completed all continuing education requirements of the New York State Department of Education; won election to the Board of Directors of his synagogue; and performed community service work with the homeless. Zinman claims this evidence was sufficient to constitute a finding of rehabilitation within the meaning of Rule 609(c)(1). We disagree.

We have construed Rule 609(c)(1) strictly, interpreting it to bar admission of a prior conviction only when there has been an express finding that the person convicted has been rehabilitated. *See United States v. DiNapoli*, 557 F.2d 962, 966 (2d Cir.) (New York certificate of relief from disabilities was not based on a finding of innocence or rehabilitation, and therefore did not trigger application of Rule), *cert. denied*, 434 U.S. 858, 98 S.Ct. 181, 54 L.Ed.2d 130 (1977); *United States v. Pagan*, 721 F.2d 24, 29–30 (2d Cir.1983) (judicially issued certificate setting aside conviction and unconditionally discharging youthful offender from probation barred admission of conviction under Rule).[2] The record contains no evidence of a finding that Zinman was rehabilitated, and we believe the district court acted within its discretion in ruling that Zinman's community-mindedness and lawful conduct, standing alone, did not constitute a finding of rehabilitation within the meaning of Rule 609(c)(1).

■ Having decided to admit the conviction, we think the district court did not abuse its discretion in refusing to admit evidence of Zinman's law-abiding and community-minded behavior following his conviction. This evidence neither rebutted a false impression resulting from Zinman's

---

**2.** We are not persuaded by *United States v. Thorne*, 547 F.2d 56, 58–59 (8th Cir.1976) (per curiam), wherein the court affirmed the district court's ruling that a witness's receipt of a graduate degree in guidance, and his subsequent use of that degree to supervise drug treatment programs, was evidence that he had been rehabilitated after his conviction for drug trafficking. This expansive reading of Rule 609(c) appears to conflict with our interpretation of the rule in *DiNapoli* and *Pagan*.

conviction, *see United States v. Bilzerian,* 926 F.2d 1285, 1296 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991), nor otherwise explained his conviction, *see United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36, 40 (2d Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979), and therefore was not proper redirect examination.

## B. *Conduct of the Judge*

Zinman contends that he was deprived of a fair trial because the district court judge: demonstrated partiality toward Black & Decker both before the jury and in the robing room, did not treat counsel evenhandedly before the jury, engaged in prejudicial "cross-examination" of Drs. Posner and Dutka, and unduly restricted his cross-examination of Black & Decker's expert witness. We have scrutinized the record, and we find all of these contentions are without merit. Zinman received "a fair, as opposed to a perfect trial." *United States v. Pisani,* 773 F.2d 397, 402 (2d Cir.1985).

■ We do not believe that the judge's occasional comments on the evidence demonstrated partiality or bias. As we have explained:

> the district judge, in conducting a criminal or civil trial, acts as more than a mere moderator or umpire. His function is to set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the jury will have the evidence clearly presented.

*Anderson v. Great Lakes Dredge & Dock Co.,* 509 F.2d 1119, 1131 (2d Cir.1974) (citations omitted). This is a duty which the judge "cannot discharge by remaining inert," *Care Travel Co. v. Pan American World Airways, Inc.,* 944 F.2d 983, 991 (2d Cir.1991) (quoting *United States v. Marzano,* 149 F.2d 923, 925 (2d Cir.1945)), and he may summarize evidence for the jury and comment on it if he chooses. *Ah Lou Koa v. American Export Isbrandtsen Lines, Inc.,* 513 F.2d 261, 263 (2d Cir.1975).

Although there were several instances in which the judge appears to have ignored our admonitions to display patience with counsel,[3] these incidents were infrequent and minor and did not result in prejudice to Zinman. *See Pisani,* 773 F.2d at 404; *see also United States v. Robinson,* 635 F.2d 981, 985 (2d Cir.1980), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981).

Zinman's contention that the judge failed to restrain defense counsel in its comments before the jury is also without merit. Although Black & Decker's counsel did make several highly improper comments before the jury, the judge instructed the jury to disregard those comments.[4]

■ The judge did express skepticism of Zinman's case before counsel in the robing room, but the comments were not made before the trier of fact and therefore did not affect the fairness of the trial. *See United States v. DiTommaso,* 817 F.2d 201, 221 (2d Cir.1987).

■ The judge's examination of Drs. Posner and Dutka was also proper. A judge may question witnesses in an effort "to clarify ... legal and factual issues and thus minimize possible confusion in the juror's minds." *Anderson,* 509 F.2d at 1131. In questioning Zinman's witnesses, we believe that the judge was "seeking solely to clarify the evidentiary picture for the benefit of the jury, without any apparent prejudice to the defendant other than that which

---

**3.** Apparently perturbed by the length of the cross-examination of Saffell by Zinman's counsel, the judge remarked to Black & Decker's counsel, "Don't be too helpful [to Zinman's counsel] ... [o]ur lives are flittering away." Joint Appendix at 824. During the cross-examination of Jones, the judge similarly remarked, "Our lives are slipping away." *Id.* at 1071.

**4.** When defense counsel accused Zinman's counsel of having coached his witnesses to give long speeches, the court told the jury to "disregard all the comments of the attorneys. Everything the attorneys say is not evidence in the case and more often than not it would be a negative assistance to you in reaching your verdict." Joint Appendix at 181. Similarly, when defense counsel stated, "I'm thinking of becoming a podiatrist, your Honor. As soon as this case is over, I am becoming a podiatric surgeon to vastly increase my income," the court instructed the jury to disregard the remark. *Id.* at 550.

would normally accrue from proof of facts that might tend to [refute] plaintiff's claim." *Id.* at 1132.[5]

 Finally, the judge did not act improperly in restricting Zinman's cross-examination of Black & Decker's expert witness, Jones. We have noted that:

> A trial court is allowed wide discretion in the management of the cross-examination of witnesses. "[I]n the last analysis the trial court is the governor of the trial with the duty to assure its proper conduct and the limits of cross-examination necessarily lie within its discretion. And we should not overrule the exercise of that discretion unless we are convinced that the ruling of the court was prejudicial."

*United States v. Singh,* 628 F.2d 758, 763 (2d Cir.1980) (quoting *Foster v. United States,* 282 F.2d 222, 224 (10th Cir.1960)), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). *See also* Fed. R.Evid. 611(a). After Zinman's counsel ignored repeated warnings to use his cross-examination time efficiently and to focus only on material issues in the case, the judge acted within his discretion in terminating the cross-examination.

### C. *Consistency and Adequacy of the Verdict*

Zinman contends that the jury's verdict cannot stand because it is: (1) internally inconsistent, and (2) grossly inadequate. We disagree.

The jury's award of $12,858 for lost future earnings is not inconsistent with its failure to award any damages for future pain and suffering. In light of the attack mounted on Zinman's credibility, the jury could have disbelieved his testimony as to his continued pain and suffering, but still found that the injury impaired his ability to earn a living. *See Brooks v. Brattleboro Memorial Hospital,* 958 F.2d 525, 529 (2d Cir.1992) (if jury's answers to special interrogatories may be harmonized rationally, they are not inconsistent).

We believe that Zinman has waived any right to challenge the adequacy of the jury's award. Where, as here, a party has not attacked the adequacy of a verdict in a motion for judgment as a matter of law or for a new trial, we have usually refused to review this issue on appeal. *See Calcagni v. Hudson Waterways Corp.,* 603 F.2d 1049, 1051–52 (2d Cir.1979) (per curiam); *Vaught v. Childs Co.,* 277 F.2d 516, 518 (2d Cir.1960). While we depart from this rule where a verdict "offend[s] fundamental conceptions of allowable damages," *Vaught,* 277 F.2d at 518, or "presents so plain an error that it should be entertained in order to prevent a miscarriage of justice," *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 56 (2d Cir.1992), this verdict does not fit either of these categories.

Affirmed.

---

5. The judge properly instructed the jury to draw no inferences from his questioning of the witnesses. *See United States v. 141st Street Corp.,* 911 F.2d 870, 881 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).