*Summer Crest LLC v. Town of Monroe*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of April, two thousand twenty-six.

PRESENT:

> ROBERT D. SACK,
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges*

_____

SUMMER CREST LLC, PAMELA LEE,

> *Plaintiffs-Appellants*,

18 SERGIO LANE LLC, SERGIO LANE LLC, 9 LAKE REGION BLVD LLC, 111 LAKE REGION BLVD LLC, 127 LAKES RD LLC,

> *Plaintiffs*,

v.                                                   No. 25-1346

TOWN OF MONROE,

                    *Defendant-Appellee.*
_____

   **For Plaintiffs-Appellants:**          BRIAN J. ISAAC, Pollack, Pollack, Issac &
                                           DeCicco, LLP, New York, NY.


   **For Defendant-Appellee:**             ADAM L. RODD (Stephen J. Gaba, *on the
                                           brief*), Drake Loeb PLLC, New Windsor,
                                           NY.

   Appeal from a judgment of the United States District Court for the Southern

District of New York (Judith C. McCarthy, *Magistrate Judge*).[1]

   **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the May 12, 2025 judgment of the district

court is **AFFIRMED**.

   Summer Crest LLC and its principal owner Pamela Lee (collectively,

"Summer Crest") appeal from the district court's judgment in favor of the Town

of Monroe, New York (the "Town") following a trial at which the jury found that

a Town law limiting the number of properties that a residential landlord could

own did not proximately cause damage to Summer Crest.  On appeal, Summer

_____

[1] The parties consented to transfer the case to a magistrate judge for all proceedings pursuant to
28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

Crest argues that the district court "fundamentally" erred by improperly articulating the proximate-cause standard in its verdict form and abused its discretion by (i) excluding certain evidence that Summer Crest did not disclose in its initial disclosures pursuant to Federal Rule of Civil Procedure 26 and (ii) admitting evidence of a key witness's prior conviction in violation of Federal Rule of Evidence 609(b). Summer Crest also contends that the jury's verdict was "contrary to the trial evidence." Summer Crest Br. at 26 (capitalization altered). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.      Background

Lee owns several companies, including Summer Crest, that manage five residential properties with around twenty units in the Town. She manages the properties with her partner, Timothy Mitts, who was convicted of aiding and assisting tax fraud in 2009.

In February 2023, the Town enacted Local Law No. 3, which prohibited any person or entity from owning more than three residential rental properties within the Town.[2] In July 2023, Lee, Summer Crest, and Lee's other management

---

[2] The Law has since been repealed.

companies sued the Town pursuant to 42 U.S.C. § 1983, alleging that Local Law No. 3 deprived them of their property rights and seeking damages for lost rental income. In October 2023, Summer Crest and the Town agreed that Summer Crest could continue operating its properties during the course of the litigation.

In November 2023, Summer Crest served its initial disclosures pursuant to Rule 26 on the Town, and discovery concluded on April 8, 2024. Although Summer Crest's initial disclosures listed Lee and Mitts as its only witnesses, Summer Crest submitted a proposed pretrial order on July 18, 2024 – fourteen weeks after the close of discovery – identifying four additional witnesses who would testify about the impact of Local Law 3 on the value of Lee's various properties.

The following day, the Town filed a motion *in limine* under Federal Rule of Civil Procedure 37(c) to block Summer Crest from introducing these additional witnesses. In February 2025, the district court granted the Town's motion. Summer Crest then filed its own motion *in limine*, seeking to preclude the Town from introducing evidence of Mitts's prior conviction for impeachment purposes. The district court denied Summer Crest's motion. Before trial, Lee's other management companies withdrew from the case, leaving her and Summer Crest

as the only remaining plaintiffs. The parties stipulated that the sole issues to be resolved at trial would be (i) whether Local Law No. 3 caused damages to Summer Crest and Lee, and (ii) if so, the amount of such damages.

The case proceeded to trial on May 8, 2025. At the close of the evidence, the Town moved for judgment as a matter of law under Federal Rule of Civil Procedure 50; Summer Crest did not. The district court denied the Town's motion, concluding that there was sufficient evidence for the case to go to the jury. The district court then reviewed the proposed jury charge and verdict form with counsel. As relevant here, the verdict form asked two questions: (i) "Have [Summer Crest and Lee] proven by a preponderance of the evidence that [the Town's] enactment of Local Law No. 3 was the proximate cause of the damages they claim to have suffered?" and (ii) "What amount of compensatory damages, if any, have [Summer Crest and Lee] proven by a preponderance of the evidence?" App'x at 536–37. Summer Crest did not object to the proposed jury charge and, after some discussion, accepted the verdict form as well. After less than a day of deliberation, the jury returned a verdict in favor of the Town on the first question and, accordingly, awarded no monetary relief. Summer Crest timely appealed.

5

## II.    Discussion

### A.    The District Court Did Not Fundamentally Err in Its Verdict Form.

Summer Crest concedes that it did not challenge the special-verdict form below.  Nor does it dispute that the jury charge correctly explained the relevant legal standard: "*a* proximate cause" rather than "*the* proximate cause."  It nevertheless argues on appeal that the verdict form improperly asked the jury to determine whether "Local Law 3 was *the* proximate cause" of its injuries as opposed to merely *a* proximate cause.  *Id.* at 536 (emphasis added).  In essence, Summer Crest posits that the use of the definite rather than the indefinite article on the verdict form wrongly implied that its injuries could have only one proximate cause when in fact they could have more than one.

When a civil litigant fails to object to a special-verdict form at trial, "we will entertain" its challenge on appeal "only if the alleged error is fundamental." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007) (internal quotation marks omitted).  A fundamental error is one that "is so serious and flagrant that it goes to the very integrity of the trial."  *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 49 (2d Cir. 2015) (internal quotation marks omitted).  Where a district court states the proper legal standard in its charge but states the wrong legal standard in the special-verdict form, we "must . . . read" the special-

6

verdict question "in conjunction with the judge's charge to the jury," *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 96 (2d Cir. 1998), and will not find a fundamental error where the special-verdict question, when "considered in light of the jury charge," would not have "confus[ed]" the jury, *Cash v. County of Erie*, 654 F.3d 324, 340 (2d Cir. 2011). Here, because Summer Crest concedes that it failed to challenge the verdict form in the district court, the fundamental-error standard applies.

Both parties assume that New York law defines proximate cause for present purposes and therefore do not address the threshold choice-of-law issue. But Congress directed courts to apply federal law in section 1983 claims where it is "suitable" and to fill gaps with "the common law" of the state where the district court sits "so far as [it] is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *Moor v. Alameda County*, 411 U.S. 693, 703 (1973) ("[Section] 1988 instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts."). The Supreme Court has "read [section] 1988" to mean that a federal court may use "both federal and state rules" of common law, choosing "whichever better serves the policies expressed" in section 1983. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969).

Our precedents have concluded that although "[a] [section] 1983 action, like its state tort analogs, employs the principle of proximate causation," *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999), "federal law defines the elements of a [section] 1983 . . . claim, and . . . a [s]tate's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements," *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (internal quotation marks omitted) (discussing application of federal common law in malicious-prosecution context), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022); *see also County of Los Angeles v. Mendez*, 581 U.S. 420, 430–31 (2017) (applying federal common-law principles to proximate cause in excessive-force context). We therefore treat New York law as persuasive but not binding within the context of broader tort principles.

Summer Crest argues that, under New York law, a court errs when it asks the jury whether an event was *the* proximate cause rather than *a* proximate cause. *See Galioto v. Lakeside Hosp.*, 506 N.Y.S.2d 725, 735 (2d Dep't 1986) ("[T]he court in its charge should have used the phrase 'a proximate cause' rather than 'the proximate cause' to convey the proper law to the jury and avoid confusion."); *Capicchioni v. Morrissey*, 613 N.Y.S.2d 499, 500 (3d Dep't 1994) ("[U]se of the phrase

8

'the proximate cause' rather than 'a proximate cause' was inappropriate, since it implied that there could be only one proximate cause for [plaintiff's] injuries."). This rule is grounded in the broad principle that there can be multiple proximate causes because "a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) (citing 57A Am. Jur. 2d § 529 (2004) (discussing proper jury instructions in cases involving multiple proximate causes)). Given that state common law on proximate cause "is not inconsistent" with federal common law on proximate cause, we agree that the state rule is "suitable" in this context. 42 U.S.C. § 1988(a). We also agree that the verdict form's reference to "the proximate cause," as opposed to "a proximate cause," was contrary to New York law.

Nevertheless, any error in the special-verdict form was not "fundamental" because the district court properly instructed the jury in its charge. *See Cash*, 654 F.3d at 340 (rejecting fundamental error where "there was [not] any confusion" as to the charge). In particular, the district court instructed the jury that Summer Crest "must prove by a preponderance of the evidence that [the Town's] conduct was *a* proximate cause of the damages they sustained," and the court defined "a proximate cause" as "an act or omission" that "was a substantial factor in bringing

9

about or actually causing the harm." App'x at 524 (emphasis added). Throughout

its charge, the court referred correctly to "*a* proximate cause," using the indefinite

article four times, App'x at 524–25 (emphasis added); indeed, the jury also received

a written copy of the instructions in the jury room. In light of the district court's

definition – to which Summer Crest did not object below and does not object on

appeal – we see no evidence that the special-verdict form confused the jury to such

an extent that it went "to the very integrity of the trial." *Anderson Grp.*, 805 F.3d

at 49 (internal quotation marks omitted).

**B.** **The District Court Did Not Abuse Its Discretion by Excluding Witnesses Whom Summer Crest Did Not Initially Disclose.**

"We review for abuse of discretion a district court's evidentiary decisions,

including its decision to exclude evidence that is subject to a motion *in limine*."

*Tereshchenko v. Karimi*, 102 F.4th 111, 124 (2d Cir. 2024). "[T]he standard is

demanding: to find such an abuse we must be persuaded that the trial judge ruled

in an arbitrary and irrational fashion." *Id.* at 124 (internal quotation marks

omitted).

Federal Rule of Civil Procedure 26(a) provides, in relevant part, that "a party

must, without awaiting a discovery request, provide" its opponent with "the name

. . . of each individual likely to have discoverable information . . . that the

10

disclosing party may use to support its claims or defenses." When "a party fails to provide information or identify a witness as required by Rule 26(a)" or supplement as required by Rule 26(e), Rule 37(c) prohibits that party from using that "witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *See also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) ("[T]he party facing sanctions for belated disclosure [must] show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction." (internal quotation marks omitted)). Under Rule 37, "[a] district court has wide discretion to impose sanctions, including severe sanctions," and we will reverse only for an abuse of discretion. *Id.* at 294.

In determining whether the district court acted within its discretion, we consider "(1) the party's explanation for [its] failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations adopted and internal quotation marks omitted). The first factor – the proponent's failure to provide an

11

adequate explanation – carries particularly significant weight because a district court does not "abuse its discretion in imposing Rule 37(c)(1)[]" sanctions when a party fails "to shoulder" the "burden" of justifying its noncompliance. *See Design Strategy*, 469 F.3d. at 297–98 (internal quotation marks omitted).

Here, Summer Crest failed to timely disclose four witnesses it anticipated calling at trial, mentioning them for the first time in its proposed pre-trial order. These witnesses were all expected to testify to Summer Crest's assertions that Local Law 3 "prevented" the management companies "from obtaining loans which, in turn, resulted in loss of some of the rental properties through mortgage foreclosures." App'x at 80. Under the *Patterson* factors, the district court acted within its discretion when it excluded these witnesses.

*First*, Summer Crest's explanation for its failure to timely disclose or supplement its witnesses is no explanation at all. Summer Crest insists that it did not need to comply with Rule 26(a) because the district court "had not [yet] announced a trial date." Summer Crest Br. at 22. But that is not what the Rule provides. And Summer Crest's backup explanation – that it could not have anticipated needing to disclose its financing issues because the mortgages securing its property did not mature until February 5, 2024 (after the date of initial

12

disclosures) – is equally unavailing, since discovery did not close until April 8, 2024, giving Summer Crest ample time to supplement its initial disclosures when the mortgages matured. Summer Crest's prolonged delay – lasting months *after* discovery closed – weighs strongly in favor of excluding the witnesses; indeed, a court can exclude evidence for delays even in cases where discovery has not yet concluded. *E.g.*, *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 145 (2d Cir. 2019) (affirming exclusion even where disclosure "was technically served before the close of fact discovery").

*Second*, the "importance" of the evidence weighs slightly – but only slightly – against exclusion. On the one hand, the excluded witnesses' testimony was "importan[t]" because Summer Crest attempted to show damages due to the effects of Local Law 3. *Patterson*, 440 F.3d at 117; *see Design Strategy*, 469 F.3d at 297 (finding "evidence of lost profits was essential to proving . . . damages"). On the other hand, precluding these witnesses from testifying did not prevent Summer Crest from introducing *any* evidence at trial that its property indeed went into default since Mitts and Lee were capable of providing such testimony. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962 (2d Cir. 1997) (concluding that the second factor weighed "only slightly" in favor of party

13

offering the witness testimony where that party offered the same evidence through a different witness).

*Third*, permitting Summer Crest to introduce new witnesses – tripling the number of its proposed witnesses – long after the close of discovery would have clearly prejudiced the Town, which was prevented from deposing those witnesses before trial. Although the district court might have reopened discovery, doing so would have prejudiced the Town, which would have been forced to bear both the costs of preparing for and deposing Summer Crest's new witnesses *and* locating its own witnesses to counter the proffered testimony. *Design Strategy*, 469 F.3d at 297 (affirming exclusion where admission would have required reopening discovery).

*Fourth*, the possibility of a continuance weighs against exclusion because the district court denied the motion *in limine* at the same conference at which it set the trial date, meaning that the district court could have scheduled a later date in light of the late disclosure. *Cf. id.* (finding that the fourth factor favored exclusion where "there was only a short time left before trial" (internal quotation marks omitted)).

In sum, the weight of the *Patterson* factors favors excluding Summer Crest's late-disclosed witnesses: the first factor, which carries significant weight, strongly

favors exclusion, as does the third. *See id.* at 297–98. Although the second and fourth factors favor admission, the second favors admission of the witnesses only slightly. *See id.* (affirming exclusion even when not all factors weighed in favor of exclusion). Given that Summer Crest "missed the deadline for disclosure by months" with no justification, we cannot say that the district court "abused [its] discretion in refusing to permit" Summer Crest to introduce these witnesses. *Id.* at 297 (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).

## C.    The Admission of Mitts's Prior Conviction was Harmless Error.

Summer Crest next asserts that the district court erred in admitting evidence of Mitts's nearly sixteen-year-old conviction for aiding or assisting in tax fraud in violation of 26 U.S.C. § 7206(2). In particular, Summer Crest contends that this scenario does not present one of the "very rare[] and . . . exceptional circumstances" in which courts admit convictions older than ten years. Summer Crest Br. at 25 (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)). Although we agree that the district court did little to justify its admission of Mitts's prior conviction, we nonetheless conclude that, even assuming the district court erred, the error was ultimately harmless.

We review a district court's "decision whether to admit evidence of older convictions for impeachment" under Federal Rule of Evidence 609 "for an abuse

15

of discretion." *United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998). And even where a court does abuse its discretion, "[w]e will not vacate for a new trial" for a harmless error, *i.e.*, where we "can conclude with fair assurance that the evidence did not substantially influence the jury." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 84 (2d Cir. 2017) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 61 (providing that an "error in admitting . . . evidence" that does not "affect any party's substantial rights" is not a "ground for granting a new trial . . . or otherwise disturbing a judgment"); 28 U.S.C. § 2111 (instructing appellate courts to disregard errors that "do not affect the substantial rights of the parties"). "In civil cases, the burden falls on the appellant to show that the error was not harmless and that it is likely that in some material respect the factfinder's judgment was swayed by the error." *Warren v. Pataki*, 823 F.3d 125, 138 (2d Cir. 2016) (internal quotation marks omitted).

If more than ten years have passed since the later of a "witness's conviction or release from confinement" for that conviction, a party may impeach that witness with evidence of his criminal conviction only if the court finds that the conviction's "probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The district court's ruling "must be made on[ ] the[ ]record and based

16

on 'specific facts and circumstances.'" *Payton*, 159 F.3d at 57 (quoting Fed. R. Evid. 609(b)(1)).

By the time of the May 2025 trial, more than ten years had passed since Mitts was released from confinement for his 2009 conviction.[3]  Accordingly, Rule 609(b) applies.  But the district court neither made its ruling on the record nor grounded its conclusion in the "specific facts and circumstances" of Mitts's conviction.  *Id.* Instead, the court decided the motion *in limine* in only a minute entry, providing no written analysis.[4]  *See United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978) (finding summary denial of "pretrial motion to exclude the prior convictions for purposes of impeachment" insufficient as "an on-the-record finding")*.*  And while the district court did consider, at oral argument, that aiding or assisting "[t]ax evasion is a crime of fraud, truth[,] [and] veracity" and that "the nature of [that] crime" was probative of Mitts's credibility, App'x at 176, such a simple recitation

---

[3] Although both parties seem to assume that Mitts had been out of confinement for more than ten years by the time of the trial, the record below is not crystal clear.  Mitts was sentenced to fifty-one months' imprisonment and represented to the district court that he had ultimately served thirty-six months in prison plus a certain number of unspecified months of home confinement. On this record, it seems more likely than not that Mitts was released sometime before May 2015, a decade before the trial began.

[4] Another minute entry issued on the same date – April 4, 2025 – notes that the district court decided to admit Mitts's conviction in a bench order denying Summer Crest's motion *in limine* and directs the reader to the transcript for that day.  App'x at 7.  But no April 4, 2025 transcript is available either in the parties' appendices or in the district court's docket.

of the nature of the crime does not amount to a decision on the record that is tailored to the specific facts and circumstances of the witness before the court. *See, e.g.*, *Farganis v. Town of Montgomery*, 397 F. App'x 666, 669 (2d Cir. 2010) (faulting district court for (i) conducting only "a brief colloquy" and (ii) allowing any "conviction that goes to false statement . . . , even if it's beyond that 10 years, as long as it's been noticed"). Nor did the district court here weigh the evidence's probative value and prejudice. *Id.* (faulting district court for not "balancing to determine [whether] the probative value of [the witness's] prior conviction substantially outweighed its potential prejudicial effect"). In short, the district court abused its discretion to the extent that it failed to make the requisite on-the-record findings regarding the specific facts and circumstances surrounding Mitts's conviction and whether the probative value substantially outweighed the prejudicial effect.

But the district court's error, though regrettable, is not dispositive. And here, Summer Crest has not satisfied its burden to show that "the error was not harmless." *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (placing the burden of showing harmfulness on a civil appellant). At most, Summer Crest contends that the admission of Mitts's

18

conviction might "have muddied the[] waters" surrounding the issue of proximate cause. Summer Crest Br. at 26. But "mudd[ying] the[] waters" is not the same as substantially "sway[ing]" the "jury's judgment." *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012); *see also, e.g.*, *Farganis*, 397 F. App'x at 669–70 (finding improper admission of thirteen-year-old conviction for crime of falsity to be harmless); *Jones v. New York City Health & Hosps. Corp.*, 102 F. App'x 223, 226 n.4 (2d Cir. 2004) ("[W]e know of no case where admission of an old conviction was deemed reversible error."). Without more, we cannot say that the district court's failure to conduct a proper Rule 609(b) analysis amounted to more than harmless error.

### D. Summer Crest Waived Its Challenge to the Jury's Verdict.

Summer Crest finally contends that the jury's verdict was "contrary to the trial evidence." Summer Crest Br. at 26. But the law is clear that a party who failed to move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 at the close of evidence at trial cannot challenge the jury's evidentiary findings on appeal. *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999) (declining to address weight-of-evidence argument because appellant made no post-verdict motion for judgment as a matter of law). Because Summer Crest

19

failed to move for judgment as a matter of law at the close of the evidence at trial, we will not address its weight-of-the-evidence argument on appeal.

*    *    *

We have considered Summer Crest's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court