2025 IL App (1st) 242219

SECOND DIVISION
December 9, 2025

No. 1-24-2219

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JEFFREY KOZIK JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19L9312 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Robert F. Harris, |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Jeffrey Kozik Jr., brought claims under the federal Employers' Liability Act (45

U.S.C. § 51 *et seq.* (2018)) against his former employer, Union Pacific Railroad Company (Union

Pacific), for injuries he alleged were sustained during his employment. Kozik testified during the

subsequent jury trial, and the jury awarded him approximately $3.5 million in damages. In this

appeal, Union Pacific argues that the trial court erroneously excluded evidence bearing on Kozik's

credibility, specifically that Kozik was convicted in 2016 of a crime of dishonesty. For the

foregoing reasons, we reverse the judgment of the circuit court and remand for a new trial.

¶ 2      The record shows that Kozik filed a complaint against Union Pacific on August 22, 2019. Kozik alleged that he was employed as a conductor by Union Pacific and that he was injured in August 2017, when "a piece of concrete fell from the Sibley Bridge and hit [Kozik] in the head, causing [Kozik] to sustain severe, permanent and progressive physical and emotional injuries." Kozik alleged that Union Pacific "negligently or carelessly" failed to provide him with "reasonably safe methods to perform his work," failed to provide him with a "place of employment free from hazards that can cause serious bodily harm," failed to furnish him with "safe equipment with which to complete his duties," and allowed "unsafe practices to become the common practice."

¶ 3      During discovery, Union Pacific learned that Kozik had entered a guilty plea in 2016 for felony theft of property between $100,000 and $500,000 from a jewelry store where he was previously employed. The record contains limited facts underlying that conviction, in part because at Kozik's deposition, Kozik's counsel instructed him not to answer most questions regarding the circumstances of the theft. In this appeal, Kozik characterizes his felony conviction as based on an "act of embezzlement." Kozik acknowledged in his deposition that he had pleaded guilty to a theft from his prior employer and that, prior to the criminal charge being filed, Kozik's former employer had terminated him. Kozik acknowledged that he did not report to Union Pacific that he had been convicted of a felony and that, when he applied to Union Pacific, he marked "no" on his application when asked whether he was dismissed or fired by his former employer, writing instead that he was "changing jobs" due to "[c]ompany downsizing." When asked whether he knew that was untrue at the time he filled out the application, Kozik answered, "I mean, in your words, that sounds correct."

¶ 4      Trial was set for February 5, 2024, and continued by agreed motion to April 8, 2024.

¶ 5        Meanwhile, on January 23, 2024, Kozik filed a "Request for Certificate of Good Conduct" in the criminal division under the case number related to his felony theft conviction. Kozik stated that he was applying for a certificate of good conduct because he wanted to "remove all employment barriers that exist because of [his] criminal record." Specifically, Kozik stated that he was "searching for other employment and looking to remove any obstacles in [the] hiring process." Kozik averred that the evidence of his "rehabilitation" included that he had "3 or fewer arrests" in his criminal history, that he had a "steady work history" of being employed "by Union Pacific railroad since" 2012, that he supported his wife and son, and that he was "involved with [his] community" in coaching his son's baseball team and assisting with his son's activities.

¶ 6        In his request, Kozik explained the circumstances of his prior conviction. Specifically, Kozik stated that, while working for a "jewelry store company," he "used [his] position within the company for [his] gain." Kozik wrote and cashed checks and "altered the names in financial software to hide it." Kozik stated that he admitted responsibility for his crimes, pleaded guilty, paid restitution, and served two years' probation.

¶ 7        Kozik's request for a certificate of good conduct was before the criminal court on February 16, 2024. No transcript of the hearing appears in the record on appeal; however, the criminal disposition sheet indicates that Kozik was accompanied by one of the same attorneys who also represented him in his suit against Union Pacific. An assistant state's attorney also appeared, who stated that the State had "no objection" to Kozik's request. Following the hearing, the court granted Kozik's request, finding that he was eligible for a certificate of good conduct and that he was "fully rehabilitated." The court ordered that the certificate of good conduct "shall apply to remove *** [a]ll statutory employment barriers *** [and] [a]ll housing barriers that exist due to [Kozik]'s convictions."

¶ 8    On March 19, 2024, less than three weeks before trial, counsel for Kozik sent counsel for Union Pacific a copy of Kozik's certificate of good conduct and a photocopy of Illinois Rule of Evidence 609, which provides that evidence of a criminal conviction involving a crime of dishonesty is generally admissible to attack the credibility of a witness but that such evidence is "not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence." Ill. R. Evid. 609(a), (c) (eff. Jan. 6, 2015).

¶ 9    On March 28, 2024, Union Pacific filed a motion to continue trial. Union Pacific alleged that it had recently learned of Kozik's certificate of good conduct and that Kozik's counsel had informed counsel for Union Pacific that Kozik intended to move to bar evidence of Kozik's felony conviction at trial under Rule 609(c). Union Pacific alleged that Kozik sought the certificate "under false pretense," and without notice to Union Pacific, and that he made "significant misrepresentations and omissions in his application." In particular, Kozik alleged in his request for a certificate of good conduct that he was seeking the certificate to remove employment barriers based on his conviction because he was "searching for other employment." The circumstances, however, showed that the actual reason for his request was to argue that evidence of his felony conviction should be barred at the upcoming trial. Union Pacific argued that Kozik "subverted a legitimate State process intended to help citizens with prior convictions to obtain work, exclusively to benefit himself in his civil jury trial."

¶ 10    Union Pacific also alleged that it had previously agreed to reschedule the February 5, 2024, trial based on counsel for Kozik's representation regarding certain logistical issues. However, the circumstances surrounding Kozik's request for, and receipt of, a certificate of good conduct,

4

suggested that Kozik "misrepresented to [Union Pacific] and the Court the true animus for seeking a continuance."

¶ 11    Union Pacific further alleged that issues of Kozik's credibility were "foundational" to the upcoming trial, as the "incident at issue was unwitnessed, and [Kozik]'s damages largely pertain to his subjective representations of health problems and his ability to work." Union Pacific requested that the court continue trial and t allow Union Pacific to conduct additional discovery regarding Kozik's application for, and receipt of, the certificate of good conduct.

¶ 12    Kozik responded that Union Pacific's request was merely an attempt to reopen discovery, that Kozik had "no obligation to disclose his receiving of a Certificate of Good Conduct when he did so on March 19, 2024," and that he would have been "well within his rights to withhold such documents from [Union Pacific] until trial."

¶ 13    The Honorable Kathy Flanagan heard Union Pacific's motion to continue trial on April 4, 2024. The court questioned why the circumstances of how Kozik obtained the certificate of good conduct "relate[d] to anything in this case." Counsel for Union Pacific responded, "They are going to try to use the certificate of good conduct that was produced three weeks before trial to bar—", and the court interjected, "You argue to your trial judge it's not appropriate evidence. I'm not continuing the trial on that. That's an evidentiary ruling. I'm not continuing the trial."

¶ 14    Thereafter, on April 9, 2024, Kozik filed a motion *in limine* seeking to "prohibit and bar [Union Pacific] from introducing any facts related to [Kozik]'s prior guilty plea in 2016 to" felony theft, as well as any evidence regarding "the issuance of the Certificate of Good Conduct issued to [Kozik], and to prohibit and bar the facts, circumstances, and timing surrounding [Kozik]'s obtaining of the Certificate."

¶ 15    That same day, Union Pacific filed a response to Kozik's motion *in limine*. Union Pacific argued that Rule 609 explicitly permits a witness's character for truthfulness to be attacked by evidence of a crime involving dishonesty, and that it was "incontrovertible that [Kozik was convicted of the archetypal felony involving dishonesty." Union Pacific further asserted that Kozik's " 'Certificate of Good Conduct[,]' obtained on the eve of trial, does not qualify as one of the specifically enumerated procedures in subsection (c)." Union Pacific maintained that the certificate of good conduct was not a "certificate of rehabilitation, or other equivalent procedure," where section 5-5.5-25 of the Unified Code of Corrections, referred to here as the "certificate of good conduct statute," explicitly states that it is not intended to apply to bar impeachment evidence in a legal proceeding. See 730 ILCS 5/5-5.5-25(b)(ii) (West 2024) ("A certificate of good conduct shall not limit or prevent the introduction of evidence of a prior conviction for purposes of impeachment of a witness in a judicial or other proceeding where otherwise authorized by the applicable rules of evidence."). Union Pacific argued that it was "clear that the purpose of [the certificate of good conduct statute] is to remove housing and employment impediments for certain offenders" and not to allow that individual to "avoid[ ] credibility determinations" based on the prior conviction.

¶ 16    At the hearing, the court noted that a certificate of good conduct was "not exactly the letter of what 609(c) says, certificate of rehabilitation," but the court believed that it qualified as an "other equivalent procedure." The court expressed concern that the certificate of good conduct statute "specifically says *** [that] a certificate of good conduct shall not limit or prevent the introduction of evidence of prior conviction for purposes of impeachment." The court found, however, that the certificate of good conduct statute was "in conflict with 609(c)."

¶ 17     Counsel for Kozik argued that "the State of Illinois's plan was very clear not to have convictions used against ex-convicts in either housing, employment or even in court as impeachment." The court disagreed, stating,

> "Well, I'm not sure if it says that. I'm not sure that—I don't know if I agree with that. I think the basis for this certificate of good conduct is primarily to assist people to get jobs and to find housing if once they have completed their time and been adjudged by a court as in this case to have qualified for the certificate of good conduct. But I'm not sure if it was meant to be used as a shield *** in a case [ ] such as this where credibility is at issue and quite frankly is important in this case."

¶ 18     Counsel for Kozik argued that it was "such a horrible burden to put on him that he's an ex-convict given the fact that this—", and the court interjected,

> "But it's the facts. It's not a burden. It's the facts. He is an ex-convict, right. And I'm not *** taking that away. Obviously he has done a lot of work in order for [the criminal division judge] to have signed the certificate I believe.
>
> And I'm not questioning whether *** there was substantial showing of rehabilitation because he was found by clear and convincing evidence which is a fairly *** high standard to meet. And so I'm not questioning that. That's not what I'm doing. I'm not questioning [the criminal division judge]'s order at all.
>
> But I am questioning and considering the aspect of whether or not it can be, should be, used in this case as it appears to be allowed under this section regarding certificate of good conduct."

¶ 19    Counsel for Union Pacific argued that the certificate of good conduct statute and Rule 609(c) were not inconsistent and that credibility determinations were "paramount" when evidence of Kozik's symptoms were largely "subjective." Union Pacific argued that Kozik's

> "credibility as the communicator of those symptoms should be *** weighed against his *** credibility. And *** obviously his criminal conviction [of] a crime [of] moral turpitude goes squarely to his credibility.
>
> * * *
>
> *** [F]or Mr. Kozik who is the sole possessor of such critical information, it goes to all the damages and his entire theory that undergirds his argument in this case, credibility is absolutely paramount.
>
> And so, therefore, to deny [Union Pacific] the opportunity to explore, certainly to get into evidence the conviction, explore the basis for the jury's understanding and to give the jury the tools by which it will then weigh his credibility, *** and to deny [Union Pacific] that opportunity would be highly prejudicial."

¶ 20    The court agreed that it "obviously" had "concerns with respect to the conflict between the statutes," and that

> "I do think that credibility, as I have articulated and the attorneys have articulated, is going to be important in this case. Certainly with respect to damages and the jury's determination of the amount of damage that possibly could be given to the plaintiff.
>
> So I have great overarching concerns including the timing of the receipt of the certificate of good conduct and also when it was disclosed to the defense. But

8

looking at the statute under 609(c), it does not appear there is any discretion the Court has.

It says evidence of a conviction is not admissible under this rule if, one, a conviction has been the subject of a pardon, annulment, certificate of rehabilitation or other equivalent procedure and, two, the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on *** innocence.

I believe that this certificate of good conduct that was signed by Judge Reddick satisfies 609(c) and I don't see any room for the Court to have discretion even though I'm very troubled by it. And so I will grant plaintiff's motion to exclude the conviction. ***

And because of that I will grant [the] motion in limine [regarding the timing and circumstances of Kozik's receipt of the certificate of good conduct]."

¶ 21    On April 12, 2024, Union Pacific filed a motion requesting the court certify a question for immediate interlocutory appeal under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019) regarding whether a certificate of good conduct renders a conviction inadmissible under Rule 609(c). During argument on Union Pacific's motion, the court acknowledged that this was one of the "most important issues" in the case, that it was a "case of first impression," and that the issue could "genuinely affect the outcome." The court found that "the most important aspect of credibility would be regarding damages, pain and suffering and perhaps what he's told the doctors." The court stated, however, that damages were only "one part of the proceeding" and "based on the fact that it's not going to be limited to damages, *** I'm going to deny the motion."

¶ 22    Thereafter, the court conducted a jury trial. The full extent of the evidence presented at that trial is not necessary to the resolution of this appeal. In short, the evidence at trial established that in August 2017, while performing his duties for Union Pacific, Kozik was found unconscious beneath a bridge. Kozik testified that he did not remember how he was injured. Other employees from Union Pacific testified that they saw a "knot" on Kozik's forehead, and several pieces of concrete fragments under the bridge, at or near the time when Kozik was discovered unconscious. Based on this evidence, Kozik concluded that he had been struck in the head by a piece of concrete that fell from the bridge.

¶ 23    Kozik testified extensively about his injuries, including that after the accident, he experienced and/or continues to experience, anxiety, depression, panic attacks, paranoia, sensitivity to light and certain smells, loss of appetite, racing thoughts, and the inability to control his emotions. Kozik testified that he had not applied for employment at any time since the accident, because he "didn't know that [he could] work" and he was "scared of a lot of things." Kozik testified that the "task of waking up and going somewhere" or "pick[ing] up a phone and *** call[ing] to ask about work" was "tough." On cross examination, counsel for Union Pacific asked Kozik if he had made "any efforts to *** look for employment," and Kozik responded, "I have not."

¶ 24    Following Kozik's testimony, Union Pacific requested the trial court to reconsider its ruling on Kozik's motion *in limine*, arguing that Kozik's trial testimony was new evidence that "suggest[ed] he committed perjury on his application for the certificate of good conduct." The trial court denied Union Pacific's request, ruling that "any question about perjury or any sanction that might arise thereof" was a concern for the criminal court judge who issued the certificate.

¶ 25    Kozik's physician, Dr. James A. Young, testified that he specialized in brain rehabilitation injuries. Dr Young stated that certain brain injuries are "invisible" because "[p]ain is 100 percent subjective" and often a CT scan or MRI will come back "normal." Dr. Young testified that he first treated Kozik in May 2018, and that Kozik reported issues with "taste and smell," ringing in the ears, panic attacks, dizziness, headaches, and sudden mood changes. Kozik had a "clean" electroencephalogram (EEG), a "normal" "CAT scan," and an "unremarkable" MRI. Dr. Young diagnosed Kozik with a "traumatic brain injury, cognitive difficulties, behavioral abnormalities, seizure disorder, and headaches." On cross examination, Dr. Young acknowledged that many of the symptoms of brain injuries are subjective and that he did not have any independent evidence of what caused Kozik's injury.

¶ 26    Dr. Samer Kassar, a neurologist, testified that he treated Kozik between September 2017 and April 2018, following the incident. Dr. Kassar first examined Kozik on September 15, 2017, about two weeks after the incident. Dr. Kassar performed a physical examination and did not see "any evidence of trauma." Kozik was "awake, alert and oriented" and had "normal" speech. Dr. Kassar did not perceive any cognitive delays during his examination. Dr. Kassar's chart for Kozik's first visit indicated that Kozik informed Dr. Kassar that "debris fell on his head and [he] lost consciousness" and that Kozik had "amnesia regarding that day." Dr. Kassar agreed that he had no independent knowledge of the incident other than what had been reported by Kozik. Kozik complained of "tenderness to the back of his head," [d]ifficulty swallowing ***, headaches, *** short-term memory loss, dizziness, loss of balance, loss of taste and smell, *** neck pain, nausea," increased emotions, and blurred vision. Dr. Kassar diagnosed Kozik with a "[b]rain concussion, dizziness, headache, *** neck pain and *** memory loss." Dr. Kassar ordered an MRI and EEG,

both of which subsequently came back normal. He agreed with counsel for Kozik that "normal" results did not "rule out" a concussion or traumatic brain injury.

¶ 27    Dr. Daniel Appelbaum, also testified that he is "double board certified" in both radiology and nuclear medicine. Dr. Appelbaum reviewed Kozik's CT scan, MRI, and single photon emission computed tomography (SPECT) scan to determine whether they were indicative of a traumatic brain injury. Dr. Appelbaum testified that Kozik's imaging was "all normal" and there "was no significant abnormality on any of them," which, in his opinion "exclude[d] significant traumatic brain injury as an etiology for what's been going on." Dr. Applebaum testified that in his "23 years [of experience], [he had] never seen a case of significant traumatic brain injury, moderate to severe injury, with completely normal CAT scan and MR[I] and brain perfusion SPECT." Dr. Applebaum explained that some conditions, like "addictions or autism or ADHD or schizophrenia," would not appear on the scans, but if someone had

> "trauma to the point that it causes significant brain function disorder, *** both acutely and then years later to the degree of severity that people have been talking about, I have never seen that appear with completely normal brain imaging on multiple different types of scans, CAT scan and MR[I] and the brain perfusion SPECT. I've never seen that."

¶ 28    There was also evidence presented at trial that Kozik had been seen by medical professionals in years before the incident, complaining of similar symptoms to those he experienced after the incident, including headaches, blurred vision, dizziness, loss of appetite, and vertigo. Specifically, a nurse practitioner testified that she and her colleagues treated Kozik beginning in 2012 and that Kozik visited several times prior to the 2017 incident, the most recent prior to the incident being October of 2016. In Kozik's testimony, he acknowledged that he

previously needed to be off work at times in 2012, 2013, and 2014 for migraines, which caused "[d]izziness, nausea, vomiting, [and] [l]oss of balance."

¶ 29    At the conclusion of the trial, the jury found for Kozik and against Union Pacific. The jury awarded Kozik damages in the amount of $3,515,000, comprised of $1 million for "disability," $1.25 million for past and future pain and suffering, and $1,265,000 for past and future wage loss.

¶ 30    Following the verdict, Union Pacific moved for a new trial and other relief arguing, among other things, that "Kozik's candor and credibility [were] at the core of this case" and that the court wrongly "prevented Union Pacific from attacking his credibility when he took the witness stand, even though he had been convicted of a crime of dishonesty in 2016." Union Pacific argued that the certificate of good conduct statute and Illinois Rule of Evidence 609(c) (eff. Jan. 6, 2015) did not conflict and that they could "be read harmoniously" where the legislature "made clear that certificates of good conduct are not intended, nor should they be used, to exclude otherwise relevant evidence to attack a witness's credibility."

¶ 31    In ruling on Union Pacific's motion, the court reiterated its finding that Rule 609(c) and the certificate of good conduct statute "were in conflict" and that "where an irreconcilable conflict exists between [a statute and a Rule], it is well established that the Supreme Court Rule shall prevail." The court continued:

"Although the statute that is cited to in the order does limit the use of the Certificate of Good Conduct, we are still left with the Supreme Court's Rule 609(c) that talks about the effect of a pardon, annulment, or certificate of rehabilitation and that the evidence of a conviction is not admissible under this rule if 1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other

13

equivalent procedure, and 2), the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence.

This Court does find that a Certificate of Good Conduct as outlined in its order does qualify as an equivalent procedure to kick into effect 609(c)."

¶ 32    Accordingly, the court denied Union Pacific's posttrial motion. Union Pacific filed a timely notice of appeal.

¶ 33    In this appeal, Union Pacific contends that the trial court wrongly determined that Rule 609(c) and the certificate of good conduct statute conflict and erred in finding that Kozik's receipt of a certificate of good conduct made his felony theft conviction inadmissible under Illinois Rule of Evidence 609(c) (eff. Jan. 6, 2015).

¶ 34    A trial court's decision to admit or exclude evidence usually involves a matter within the court's discretion and will be overturned only for an abuse of that discretion. *Bland v. Q-West, Inc.*, 2023 IL App (2d) 210683, ¶ 22. But when that decision depends entirely on an interpretation of law, this court's review is *de novo*. *Id.*

¶ 35    The issue presented in this case concerns the construction of a statute and a rule of evidence. When considering statutory construction issues, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Young*, 2011 IL 111886, ¶ 11. A statute's language is the most reliable indicator of legislative intent. *Id.* "To discern the plain meaning of statutory terms, it is appropriate for the reviewing court to consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.* If the statutory language is clear and unambiguous, a reviewing court must apply the language as written, without resorting to other aids of statutory construction. *Id.*

¶ 36    The same rules for statutory construction apply to the interpretation of supreme court rules.

*In re K.S.*, 2020 IL App (1st) 200377, ¶ 31. "As with statutes, the interpretation of a supreme court rule presents a question of law, which we review *de novo.*" *People v. Tousignant*, 2014 IL 115329, ¶ 8.

¶ 37   Generally, an analysis of whether a conflict exists begins with an interpretation of the statute and the rule. *People v. Diggs*, 2023 IL App (1st) 220955, ¶ 118. In either case, "our goal is to ascertain and give effect to the drafters' intention," with the most reliable indicator of intent being the language used, which must be given its plain and ordinary meaning. (Internal quotation marks omitted.) *Id.* In analyzing a statute or rule, this court may consider the reason for the provisions, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing them in one way or another. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35.

¶ 38   This court has explained that a potential conflict between a statute and court rule may arise in circumstances involving evidentiary issues. *Diggs*, 2023 IL App (1st) 220955, ¶ 119. Such a conflict "involves the separation of powers doctrine" since both the legislature and judiciary have authority to draft statutes or rules on such issues. See *id.* ("[O]ur supreme court [is vested] with administrative and advisory authority over all courts, which, consequently, extends to rulemaking authority to regulate trials. [Citations.] Notwithstanding this, the General Assembly may also legislate in this area without necessarily offending separation of powers." (Internal quotation marks omitted.)).

¶ 39   The supreme court, however, "retains primary constitutional authority over court procedure" (*People v. Peterson*, 2017 IL 120331, ¶ 31), and accordingly, a supreme court rule will prevail over a statute in cases of "*irreconcilable* conflict" (emphasis in original) (*Diggs*, 2023 IL App (1st) 220955, ¶ 120). However, if our reading of the statute and court rules reveals only a

15

"potential conflict," this court will "attempt[ ] to reconcile the two harmoniously." *Id.* ¶ 119.

¶ 40    Initially, Kozik disputes that the tool of construction requiring terms to be read harmoniously, if possible, applies only when a court is comparing "two statutes," or "potentially two court rules," but that it does not apply when a court is comparing a statute and a court rule. Kozik reasons that, because this court is "faced with two separate directives issued by separate branches of the government," "[t]he premise that a particular branch of government would not want its own statute or rule to conflict internally or with another of its statutes or rules *** has no bearing." We are unpersuaded by Kozik's argument, however, because he cites no authority, nor does he distinguish authority in which the supreme court, and this court, have used such a tool when comparing a statute and court rule. See *People v. Walker*, 119 Ill. 2d 465, 475 (1988) (the supreme court "has sought to reconcile conflicts between rules of the court and the statute"); *Diggs*, 2023 IL App (1st) 220955, ¶ 120.

¶ 41    To determine whether a conflict exists, this court will first look at the language of Rule 609. The relevant text of Rule 609 provides:

> "Rule 609.
>
> IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME
>
> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of nolo contendere, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value

of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

\*\*\*

(c) Effect of Pardon, Annulment, or Certificate of Rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence." Ill. R. Evid. 609 (eff. Jan 6, 2015).

¶ 42    Neither Kozik nor Union Pacific argues that the language of Rule 609 is ambiguous. Instead, their respective interpretations center on whether the certificate of good conduct received by Kozik qualifies as a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure" to bring it within the scope of Rule 609(c). In Kozik's words, a determination of whether the rule and the stature conflict "hinges on whether the certificate of good conduct \*\*\* falls within" the procedures set out in Rule 609(c).

¶ 43    As the trial court and the parties recognized, this is an issue of first impression in Illinois. This court has found no Illinois authority analyzing whether a certificate of good conduct qualifies as a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure" under Rule 609(c).

¶ 44    Union Pacific argues that the certificate of good conduct statute is only intended to "relieve eligible offenders of certain employment, licensing, and housing barriers" and that it is not intended to allow those offenders to "conceal[ ] their criminal history from fact-finders in subsequent legal proceedings." Based on this stated purpose, Union Pacific argues that the

17

certificate of good conduct is not an "equivalent procedure" to "a pardon, annulment, [or] certificate of rehabilitation" and that Rule 609(c) and the certificate of good conduct statute can be read harmoniously.

¶ 45    Kozik, however, responds that the certificate of good conduct he was awarded is included "within [the] scope" of Rule 609(c) because it is the equivalent of a certificate of rehabilitation. Kozik contends that the rule's use of "any equivalent procedure" is "exceptionally broad language" intended to give Rule 609(c) "a broad reach."

¶ 46    Initially, we note that the word "any" does not appear in the statute. Based on our reading, we do not find the language of Rule 609(c) to be "exceptionally broad." In drafting Rule 609, the supreme court specified that in order for an otherwise admissible conviction to be rendered inadmissible, that conviction must have been the subject of a "pardon, annulment, certificate of rehabilitation, or other *equivalent* procedure." (Emphasis added). See Ill. R. Evid. 609(c) (eff. Jan. 6, 2015).

¶ 47    Black's Law Dictionary lists two definitions for "Equivalent"—"1. Equal in value, force, amount, effect, or significance. 2. Corresponding in effect or function; nearly equal; virtually identical." Black's Law Dictionary (12th ed. 2024). Accordingly, by using the word "equivalent," the supreme court clarified that there may be other procedures that fall under the scope of Rule 609(c), but in order to qualify, they must have equal significance, or be "virtually identical," to the delineated procedures.

¶ 48    To decide whether the certificate of good conduct granted to Kozik is equally significant or "virtually identical" to a "pardon, annulment, [or] certificate of rehabilitation," and thus within the scope of Rule 609(c), it is important to look at the language of the certificate of good conduct statute, to understand the parameters of what the criminal court judge decided in that proceeding.

18

¶ 49     Section 5-5.5-25 of the Unified Code of Corrections, titled "Certificate of good conduct,"
provides in relevant part, as follows:

> "(a) A certificate of good conduct may be granted as provided in this Section
> to relieve an eligible offender of any employment, occupational licensing, or
> housing bar. The certificate may be limited to one or more disabilities or bars or
> may relieve the individual of all disabilities and bars.
>
>         ***
>
> (a-6) A certificate of good conduct may be granted as provided in this
> Section to an eligible offender as defined in Section 5-5.5-5 of this Code who has
> demonstrated by clear and convincing evidence that he or she has been a law-
> abiding citizen and is fully rehabilitated.
>
> (b)(i) A certificate of good conduct may not, however, in any way prevent
> any judicial proceeding, administrative, licensing, or other body, board, or authority
> from considering the conviction specified in the certificate.
>
> (ii) A certificate of good conduct shall not limit or prevent the introduction
> of evidence of a prior conviction for purposes of impeachment of a witness in a
> judicial or other proceeding where otherwise authorized by the applicable rules of
> evidence.
>
> (iii) A certificate of good conduct does not limit any employer, landlord,
> judicial proceeding, administrative, licensing, or other body, board, or authority
> from accessing criminal background information; nor does it hide, alter, or expunge
> the record." 730 ILCS 5/5-5.5-25 (West 2024).

¶ 50    As stated above, to render Kozik's prior conviction inadmissible under Rule 609(c), the conviction must have been "the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure." Ill. R. Evid. 609(c) (eff Jan. 6, 2015). Kozik has never contended that an Illinois certificate of good conduct is equivalent, or even similar, to a pardon or annulment. Indeed, he could not. A pardon is defined as the "act or an instance of officially nullifying punishment or other legal consequences of a crime." Black's Law Dictionary (12th ed. 2024). And an annulment is defined as the "act of nullifying or making void." *Id.* As these definitions suggest, such procedures are aimed at "nullifying" the conviction or its punishment and consequences.

¶ 51    The certificate of good conduct statute, however, makes clear that it is not intended to nullify the conviction or consequences. Instead, the statute is aimed at relieving certain eligible offenders from very specific disabilities, namely those related to "employment, occupational licensing, or housing." 730 ILCS 5/5-5.5-25(a) (West 2024). The statute also specifies several ways in which the certificate does *not* amount to a nullification of an offender's criminal record. Among other things, the statute provides that the certificate "shall not limit or prevent the introduction of evidence of a prior conviction for purposes of impeachment," that the offender's conviction may still be "consider[ed]" in a judicial proceeding, and that the certificate "does [not] hide, alter, or expunge the record." *Id.* § 5-5.5-25(b)(i)-(iii).

¶ 52    Moreover, the legislature has explicitly instructed that certificates of good conduct are not the same as a pardon and they should not be construed as such. *Id.* § 5-5.5-45 ("no certificate issued under this Article shall be deemed or construed to be a pardon").

¶ 53    Although Kozik seemingly acknowledges that a certificate of good conduct is not equivalent to a pardon or annulment, he does contend that the certificate is "equivalent" to the third procedure set forth in Rule 609(c)—a "certificate of rehabilitation." He does not explain why a

20

certificate of good conduct is equally significant or "virtually identical" to a certificate of rehabilitation, other than contending that because the criminal division judge "found that [Kozik] was fully rehabilitated," a certificate of good conduct must be equivalent to a certificate of rehabilitation.

¶ 54    This court has found nothing titled a "certificate of rehabilitation" in Illinois. Indeed, neither Kozik nor Union Pacific have identified any such Illinois procedures. Although such certificates exist in other states, those procedures are not equivalent to the Illinois certificate of good conduct.

¶ 55    For example, the California Penal Code, has a provision that reads:

> "[I]f after hearing, the court finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship, the court may make an order declaring that the petitioner has been rehabilitated, and recommending that the Governor grant a full pardon to the petitioner. This order shall be filed with the clerk of the court, and shall be known as a certificate of rehabilitation." Cal. Penal Code § 4852.13(a) (West 2024)

¶ 56    This court's reading of the California statute indicates that it is intended to be more extensive than the Illinois certificate of good conduct statute. To receive such a certificate in California, a petitioner must show his fitness to "exercise *all* of the civil and political rights of citizenship" (emphasis added). *Id.* In contrast, the Illinois certificate of good conduct statute is not intended to restore all rights of citizenship, but only certain barriers in housing, licensing, and employment. Additionally, the California statute indicates that, by granting such a certificate, the court is recommending that the California governor grant a "full pardon" to the petitioner. See *id.*

21

The Illinois statute, however, contains no such language and expressly disclaims any suggestion that the certificate is intended to influence the Illinois governor's decision on whether a pardon should issue in a particular case. See 730 ILCS 5/5-5.5-45 (West 2024) ("Nothing contained in this Article shall be deemed to alter or limit or affect the manner of applying for pardons to the Governor, and no certificate issued under this Article shall be deemed or construed to be a pardon.").

¶ 57      As stated above, this court has found no Illinois cases considering whether a certificate of good conduct is "equivalent" to the procedures specified in Rule 609(c). We note, however, that the language used in the Illinois rule of evidence was adopted from the corresponding Federal Rule of Evidence 609, in *People v. Montgomery*, 47 Ill. 2d 510, 516-17 (1971), as "a guide for trial courts in deciding whether a defendant's prior convictions should be admitted to impeach [his or her] credibility." *People v. Patrick*, 233 Ill. 2d 62, 68 (2009) (citing *Montgomery*, 47 Ill. 2d at 519). The "*Montgomery* rule" was later codified by the Illinois Supreme Court as Illinois Rule of Evidence 609 (eff. Jan. 1, 2011).

¶ 58      Since that time, both Illinois Rule of Evidence 609 and Federal Rule of Evidence 609 have undergone amendments, however their language remains similar. Like the Illinois rule, Federal Rule of Evidence 609(c) provides that,

> "Evidence of a conviction is not admissible if:
>
>> (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated, and the person has not been convicted of a later crime punishable by death or by imprisonment for more than one year; or

(2) the conviction has been the subject of a pardon, annulment, or

other equivalent procedure based on a finding of innocence.”

¶ 59     Because both the Illinois and federal rules contain identical language providing that a

conviction is not admissible if it was the “subject of a pardon, annulment, certificate of

rehabilitation, or other equivalent procedure,” we find guidance in courts outside of Illinois that

have considered what qualifies as an “equivalent procedure” under the federal rule.

¶ 60     In *United States v. Wood*, 943 F.2d 1048 (9th Cir. 1991), the Ninth Circuit considered the

admissibility of the defendant’s prior state convictions. The defendant in *Wood* had previously

petitioned, and been permitted, to withdraw his guilty pleas under a Montana statute, which gave

the court discretion to allow a person whose sentence had been deferred to later withdraw the guilty

plea or strike the guilty verdict and make the record “confidential.” At trial, the court denied the

defendant’s motion *in limine* to bar the State from referencing those convictions. After the

defendant was convicted, he appealed, contending that those convictions were inadmissible under

Federal Rule of Evidence 609(c). The Ninth Circuit disagreed, explaining that it was not an

“ ‘equivalent procedure’ for purposes of Rule 609(c)” because although the Montana statute was

“motivated by a desire to encourage rehabilitation,” it did not specifically require a finding of

rehabilitation. *Id.* at 1055-56.

¶ 61     In *United States v. DiNapoli*, 557 F.2d 962, 966 (2d Cir. 1977), the Second Circuit

considered whether a “certificate of relief from disabilities” issued under New York law rendered

a conviction inadmissible under Federal Rule of Evidence 609. The New York statute provided

that a “court of this state may, in its discretion, issue a certificate of relief from disabilities to an

eligible [first] offender for a conviction that occurred in such court” (N.Y. Correct. Law § 702

(McKinney 1976)) and that the “ ‘relief to be granted by the certificate is consistent with the

rehabilitation of the first offender.' " See *DiNapoli*, 557 F.2d at 966 (quoting N.Y. Correct. Law § 702 (McKinney 1976)); see *Da Grossa v. Goodman*, 339 N.Y.S.2d 502, 505 (N.Y. Special Term 1972). The court in *DiNapoli* explained that a " 'pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of a conviction has no relevance to an inquiry into character.' " *DiNapoli*, 557 F.2d at 966 (quoting Fed. R. Evid. 609, Advisory Committee Notes (1972 Proposed Rules)). Under the applicable New York statute, the " 'granting of a certificate of relief from disabilities in no way eradicates or expunges the underlying conviction.' " *Id.* (quoting *Da Grossa*, 339 N.Y.S.2d at 505). Accordingly, the Second Circuit concluded that it was "clear and we hold that the certificate of disabilities issued pursuant to N.Y. Correction Law §§ 700 *et seq.* is outside the scope of Fed.R.Evid. 609(c)." *Id.*; see *Able Cycle Engines, Inc. v. Allstate Insurance Co.*, 445 N.Y.S.2d 469, 472-73 (N.Y. App. Div. 1981) (A New York "certificate [of relief from disabilities] did not expunge the conviction for all purposes. *** The Legislature evidently did not intend that all indirect consequences of the conviction, such as susceptibility to impeachment of testimony, be eradicated. *** It is therefore our view that a certificate of relief from disabilities, since it clearly does not eradicate the underlying conviction, also does not render that conviction inadmissible for impeachment purposes."); *United States v. Hourihan*, 66 F.3d 458, 464 (2d Cir. 1995) (also rejecting claim that a New York certificate of relief from disabilities rendered the defendant's prior conviction inadmissible under Federal Rule of Evidence 609).

¶ 62    In *Wal-Mart Stores, Inc. v. Regions Bank Trust Department*, 69 S.W.3d 20, 27-28 (Ark. 2002), the Arkansas Supreme Court found that the trial court improperly barred evidence that the plaintiff in a slip-and-fall lawsuit had a conviction for a crime of dishonesty based on evidence that the conviction had been "expunged." The court noted that the plaintiff's order of expungement was not accompanied by a finding that she had been rehabilitated, explaining that

24

"Rule 609 draw[s] a distinction between pardons based on actual innocence or a finding of rehabilitation (which make the underlying conviction inadmissible for impeachment) and pardons granted solely to restore civil rights (which have no relevance to character and do not impair the admissibility of the underlying conviction)." (Internal quotation marks and emphasis omitted.) *Id.* at 28.

¶ 63    By contrast, courts have found "equivalent" procedures under Rule 609 in more limited circumstances. In *Applewhite v. FCA US LLC*, 603 F. Supp. 3d 528 (E.D. Mich. 2022), the court found that where a plaintiff's prior conviction had been vacated, such procedure was equivalent to the procedures under Rule 609(c). *Id.* at 533 ("Th[is] Court finds that a vacated conviction is a procedure that is equivalent to the listed procedures in Rule 609(c) and as such is inadmissible."). And in *United States v. Pagan*, 721 F.2d 24 (2d Cir. 1983), the United States District Court for the Second Circuit found that a judicially issued certificate setting aside a conviction and unconditionally discharging a youthful offender from probation barred admission of the conviction under the rule. *Id.* at 29-30  ("[T]he scope of Rule 609(c)(1) includes a proceeding *** in which the court in its discretion grants an early discharge upon a finding of rehabilitation that results in the set-aside of a conviction. Such a conviction, therefore, may not be introduced into evidence upon the subsequent trial of the same offender.")

¶ 64    As the above cases show, an analysis of whether something is "equivalent" to the procedures listed in Rule 609 entails the consideration of the purpose of that procedure—whether the procedure is focused on restoring civil rights lost by virtue of a conviction, or whether it is truly a judgment as to the applicant's rehabilitation. See *United States v. Wiggins*, 566 F.2d 944, 946 (5th Cir. 1978) (*per curiam*) (holding that Rule 609 shows "a desire to accord a controlling consideration to rehabilitation as opposed to executive grace or judicial invalidation").

¶ 65    We conclude that the Illinois certificate of good conduct statute is more like the procedures that have been found to not be equivalent to those delineated in Rule 609(c) because the purpose of the statute is focused on relieving certain disabilities. Although the Illinois certificate of good conduct statute requires a finding that the applicant has been rehabilitated, that finding must be read in the context of the purpose of the statute and the available relief. When the trial court concluded that Kozik had been rehabilitated, it did so under the parameters of the certificate of good conduct statute. The trial court was not being asked to determine whether Kozik was completely rehabilitated for all purposes, including so that his conviction could not be used as impeachment in a judicial proceeding. To the contrary, the trial court was only asked to evaluate Kozik's rehabilitation as it related to the purposes of the certificate of good conduct statute to relieve Kozik of employment and housing barriers.

¶ 66    Indeed, section 5-5.5-30 of the Unified Code of Corrections, titled "Issuance of certificate of good conduct," provides that a court may issue such certificate when the court is satisfied that, in addition to other requirements, "the relief to be granted by the certificate is consistent with the rehabilitation of the applicant." 730 ILCS 5/5-5.5-30 (West 2024). This language suggests that the finding of rehabilitation necessary is not all encompassing. To the contrary, a trial court may find an offender sufficiently rehabilitated such that certain relief is warranted, but not other relief. See *id.* § 5-5.5-25(a) ("The certificate may be limited to one or more disabilities or bars or may relieve the individual of all disabilities and bars.").

¶ 67    Moreover, even if we agreed with Kozik that the criminal division judge's order contained a general finding of rehabilitation, such a determination would suggest only that it meets the second requirement, that the procedure "required a substantial showing of rehabilitation." See Ill. R. Evid. 609(c) (eff. Jan. 6, 2015). But Rule 609(c) contains two requirements—that the conviction must

have been "(1) *** the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, *and* (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence." (Emphasis added). *Id.* If we were to conclude that any procedure requiring a court to find rehabilitation by a substantial showing is the equivalent of a certificate of rehabilitation, such a reading would render the first and second requirements synonymous. *In re Application of the County Treasurer*, 2012 IL App (1st) 101976, ¶ 37 (Courts should "construe statutes so as to yield logical and meaningful results and to avoid constructions that render specific language superfluous or meaningless.").

¶ 68      Importantly, this court has not found any authority in any United States jurisdiction that has concluded that a procedure is "equivalent" to those listed in Rule 609(c), if the statute governing that procedure expressly disclaims the intent for it to apply. To the contrary, in *United States v. Moore*, 556 F.2d 479, 483 (10th Cir. 1977), the defendant challenged her conviction, alleging that the trial court erred in refusing to suppress evidence of a prior conviction since that conviction had been expunged under a California statute. The Tenth Circuit court found that an analysis of whether that expungement qualified as "equivalent procedure" under federal Rule 609 hinged on an analysis of the California law. *Id.* at 484. The court noted that the relevant California statute included language providing that " 'in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.' " (Emphasis omitted.) *Id.* at 484 (quoting Cal. Penal Code § 1203.4 (West 1976)). Because the "statute in question clearly states that the former conviction, though expunged, may be used in a subsequent criminal proceeding involving the same party," the court in *Moore* found no error in the trial court's refusal to bar evidence of the conviction under Rule 609. *Id.*

¶ 69    Based on our review of the statute, we conclude that a certificate of good conduct is not the equivalent of a pardon, annulment, or certificate of rehabilitation. Its significance is far from the delineated procedures. As the plain language of the statute makes clear, a certificate of good conduct is intended to relieve an eligible offender of certain disabilities including "employment, occupational licensing, or housing," but it does not "prevent any judicial *** body *** from considering the conviction specified in the certificate," nor can it "limit or prevent the introduction of evidence of a prior conviction for purposes of impeachment of a witness in a judicial or other proceeding where otherwise authorized by the applicable rules of evidence." 730 ILCS 5/5-5.5-25(a), (b)(i)-(ii) (West 2024). Indeed, in the order granting Kozik's request for a certificate of good conduct, the criminal court explicitly set out the specific nature of the relief afforded to Kozik, ordering that the certificate "shall apply to remove *** [a]ll statutory employment barriers *** [and] [a]ll housing barriers that exist due to [Kozik]'s convictions."

¶ 70    Additionally, to the extent that the supreme court intended that the receipt of a certificate of good conduct would make evidence of a conviction inadmissible, despite the contrary language of the statute, it could have so specified at the time it adopted the rule in 2010[1] or amended it in 2015, by including it among the list of delineated procedures. See *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005) ("Had the [drafter] intended such an exception, it easily could have included it in the statutory language."). It did not.

¶ 71    In these circumstances, we find no irreconcilable conflict between the statute and the rule, and we may read the two harmoniously because a certificate of good conduct is not a pardon, annulment, or certificate of rehabilitation, nor is it the equivalent thereof.

---

[1] Illinois Rule of Evidence 609 was adopted September 27, 2010, and became effective January 1, 2011.

¶ 72    Kozik, however, disagrees. He acknowledges that "not many" authorities have addressed this issue, but contends that those that exist "consistently support" the conclusion that a certificate of good conduct is "the equivalent of Rule 609's certificate of rehabilitation." In support, Kozik cites authorities from a federal district court and federal circuit courts, which are not binding on this court. *Travel 100 Group, Inc. v. Mediterranean Shipping Co. (USA), Inc.*, 383 Ill. App. 3d 149, 157 (2008). Although such decisions may be considered as persuasive authority (see *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34), this court is not persuaded to follow those decisions where the issue here involves the interpretation of an Illinois rule of evidence and Illinois statute. And this distinction is particularly important in this case, since, as explained above, the Illinois statute in question explicitly provides that an Illinois certificate of good conduct "shall not limit or prevent the introduction of evidence of a prior conviction for purposes of impeachment," unlike the statutes at issue in any of Kozik's cited authorities.

¶ 73    For example, Kozik cites *Doe v. United States*, 168 F. Supp. 3d 427 (E.D.N.Y. 2016), in which the district court for the Eastern District of New York considered a motion to expunge a fraud conviction because the conviction was having an adverse impact on the movant's ability to work. The government opposed the motion, asserting that federal district courts did not have jurisdiction to expunge convictions on equitable grounds. *Id.* at 428. The trial court disagreed, noting that there was Second Circuit precedent holding that district courts have ancillary jurisdiction to hear expungement motions. *Id.* Accordingly, the court considered the movant's motion, ultimately finding that she had not shown the "extreme circumstances" to merit expungement. *Id.* at 441. Nonetheless, the court decided to issue the movant a "lesser form of relief," which it coined a "federal certificate of rehabilitation." *Id.* at 441-42. In so holding, the court looked at statutes from several states, including Illinois, and concluded that the "federal

system" should follow suit, and "adopt[ ] a certification system similar to" those states. *Id.* at 445. The court also briefly referenced Federal Rule of Evidence 609—which is similar but not identical to Illinois's Rule 609—and commented that the federal system "contemplates certificates of rehabilitation." *Id.*

¶ 74 The *Doe* court's brief comments on Illinois's certificate of good conduct statute and Federal Rule of Evidence 609 can hardly be read to be an analysis of either the statute or the rule and their interplay. And to the extent that the district court in *Doe* mistakenly characterized the Illinois certificate of good conduct as a certificate of rehabilitation, we find its reasoning unpersuasive.

¶ 75 Although we find that the plain language of both the statute and the rule leads to a conclusion that a certificate of good conduct is not equivalent to a certificate of rehabilitation, we also note that the abbreviated proceedings provide further support for such an interpretation.

¶ 76 A record of the hearing that occurred before the criminal court on Kozik's certificate of good conduct is not before us. The only documents included in the record on appeal are the docket sheet and the written order granting Kozik's petition. Those documents, however, do not indicate whether the court heard any witnesses or received any evidence other than what was included in Kozik's petition. The docket sheet indicates, however, that the State did not oppose Kozik's motion, and the written order merely provides that the court "reviewed [Kozik's] Request for Certificate of Good Conduct filed on 2/16/24" before issuing the order. In these circumstances, we do not know whether, in reviewing Kozik's unchallenged request, the procedure utilized by the criminal court was perfunctory. We do know, however, that the record suggests that Kozik misrepresented his motivations to the criminal court and that he was not seeking the certificate in line with the purposes of that statute, but instead to obtain a litigation advantage in his civil suit

against Union Pacific. Kozik was accompanied to the hearing on his certificate by one of the lawyers who represented him in his civil lawsuit. Despite informing the criminal court that he was seeking the certificate because he was "searching for other employment" and because he wanted to remove "obstacles in [the] hiring process," he later testified under oath to his belief that it would not be possible for him to obtain or hold future employment and that he had made no "efforts to *** look for employment." We do not believe that the drafters of Rule 609 or the certificate of good conduct statute intended to allow this type of use of the judicial process. See *Marker*, 233 Ill. 2d at 167 ("when interpreting a rule, we must presume that the drafters did not intend to produce *** unjust results").

¶ 77    Additionally, as stated above, in analyzing the statute and rule, this court may consider the purposes for which they were enacted and the problems sought to be remedied. *State ex rel. Leibowitz*, 2020 IL 124754, ¶ 35. And generally, a court will find no conflict between two provisions when they were enacted for different purposes. See *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 450 (1999) (finding that the Illinois Vehicle Code (625 ILCS 5/11-205, 11-907 (West 1996)) and the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-202 (West 1996)) were not in conflict. Each statute stands "in its own sphere" and the immunities provided by the Vehicle Code and the Tort Immunity Act serve different purposes (internal quotation marks omitted)); *Young v. Forgas*, 308 Ill. App. 3d 553, 560 (1999) (same).

¶ 78    Here, the statute and the rule clearly serve very different purposes. The statute is concerned with allowing those eligible offenders to be relieved of certain barriers in housing and employment after they have shown "good conduct" for a minimum period of time following their convictions. See *People v. James*, 2017 IL App (4th) 160256, ¶ 11 ("Section 5-5.5-25 of the Unified Code

31

[citation] grants individuals convicted of certain offenses the opportunity to apply for a 'certificate of good conduct' to assist with obtaining gainful employment, and section 5-5.5-30 of the Unified Code [citation] provides the process for the issuance thereof."). As then Illinois State Senator Barack Obama explained in introducing the legislation that would eventually become the certificate of good conduct statute, the statute was introduced to alleviate the concern that a "huge influx of nonviolent offenders who have left the system, have paid their dues and are now trying to get gainful employment *** [to] make sure that they don't go back into lives of crime, and they're having difficulty with respect to finding gainful employment." 93d Ill. Gen. Assem., Senate Proceedings, March 26, 2003, at 87.

¶ 79    The rule, by contrast, like the other Illinois Rules of Evidence, is concerned with fairness, and a search for the truth. See *People v. Gant*, 58 Ill. 2d 178, 185 (1974) ("the fundamental purpose of any trial is the search for truth"). The Illinois Rules of Evidence explicitly provide that they "shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Ill. R. Evid 102 (eff. Jan. 1, 2011). In light of these distinct purposes, we continue to find no conflict between the statute and the rule.

¶ 80    Finally, Kozik asserts that this court may affirm on any basis in the record and that we should do so under Rule 609(a) because the probative value of the evidence of Kozik's offense is "substantially outweighed by the danger of unfair prejudice."

¶ 81    Rule 609(a) provides the general rule that evidence of a criminal conviction is admissible to impeach, as long as the offense is a felony—"punishable by death or imprisonment in excess of one year"—or the crime "involved dishonesty or false statement." Ill. R. Evid. 609(a) (eff. Jan. 6, 2015). Here, Kozik's conviction for felony theft of property between $100,000 and $500,000 fits

under both. This general rule applies unless the court determines that "the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." *Id.* As stated above, Rule 609(a) is the codification of a balancing test first set out by our supreme court in *Montgomery*, 47 Ill. 2d at 516.

¶ 82      The *Montgomery* rule "requires a trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice." *People v. Mullins*, 242 Ill. 2d 1, 14 (2011). However, the test is not a "simple balancing test" in which a "slight tipping of the scales" toward the risk of unfair prejudice is enough to exclude a conviction. *Stokes v. City of Chicago*, 333 Ill. App. 3d 272, 279 (2002). "To exclude the evidence, the trial court must find the risk of unfair prejudice *substantially* outweighs the probative value of the conviction for impeachment purposes." (Emphasis in original.) *Id.* Additionally, the record must show that the trial court "conduct[ed] a meaningful test" and that it understood and used its discretion and considered factors on both sides of the scale. *People v. Elliot*, 274 Ill. App. 3d 901, 909-11 (1995), *abrogated on other grounds by People v. Williams*, 173 Ill. 2d 48 (1996). "The probative value side of the scale should focus on the person's truthfulness as a witness." *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151, 160 (1999).

¶ 83      There is no question here that the court did not conduct a *Montgomery* balancing test. The court based its decision to bar evidence of Kozik's conviction on its conclusion that it lacked discretion to allow evidence of Kozik's conviction under Rule 609(c). It did not weigh the above factors or conclude that the probative value of Kozik's conviction was "substantially outweighed" by the danger of unfair prejudice.

¶ 84      Nor could it. Based on our review of the record, Kozik's felony conviction for a crime of dishonesty is plainly admissible. He was convicted of felony theft less than 10 years prior to the

civil trial. See *Elliot*, 274 Ill. App. 3d at 909 ("Crimes involving deceit, fraud, cheating, or stealing press heavily on the probative value side of the scale."). The probative value of evidence of Kozik's conviction is significant, where his credibility is fundamental to the issues involved in this trial. See *Stokes*, 333 Ill. App. 3d at 278("A finding that a witness's credibility is an issue in the case establishes the relevance of an attack on that credibility by means of a prior conviction."). In this case, the jurors were tasked with deciding whether they believed Kozik's version of events regarding the incident, as well as his subjective complaints about his health and ability to hold future employment. If the jurors did not believe Kozik's testimony, or if they believed that he was exaggerating his symptoms or abilities, they may have either significantly reduced the damages awarded to Kozik, or found in favor of Union Pacific.

¶ 85    Additionally, there is little risk of unfair prejudice here. This court has explained that the risk of unfair prejudice is higher when a prior conviction is being used to impeach a criminal defendant than a witness or a party to a civil proceeding "because a defendant who has committed a previous crime may be convicted because of his prior offense, rather than because of the lack of credibility in his defense." *People v. Thomas*, 58 Ill. App. 3d 402, 405 (1978). In these circumstances, we cannot conclude that the probative value is substantially outweighed by the danger of unfair prejudice. See *Minor v. City of Chicago*, 101 Ill. App. 3d 823 (1981) (trial court improperly excluded evidence of the plaintiff's prior conviction for theft in civil lawsuit against the City of Chicago for injuries allegedly sustained from a fall on a public sidewalk).

¶ 86    Finally, we recognize the possibility that Kozik's 2016 felony theft conviction may be more than 10 years old at the time of a retrial. The supreme court, however, has instructed that the *Montogomery* rule time bar, codified in Rule 609, cannot be used to prevent the introduction of evidence that would have been admissible at the original trial. *People v. Reddick*, 123 Ill. 2d 184,

203 (1988).

¶ 87    The supreme court explained:

> "If the evidence should have been admitted previously, then it must be admitted on retrial. [The witness] will likely be attempting to track his prior testimony, and fundamental fairness dictates that [the other party] be allowed to impeach him in the same manner that [the other party] should have been permitted to impeach him in the initial trial." *Id.*

¶ 88    Accordingly, we hold that evidence of Kozik's felony theft conviction is admissible and is not time-barred, even if more than 10 years have elapsed at the time of the future retrial. *Id.*; see *People v. Knox*, 2014 IL App (1st) 120349, ¶¶ 39-42 (finding that the trial court properly admitted evidence of the defendant's then 11 year old convictions at a retrial when the convictions were less than 10 years old at the time of the original trial); *People v. Jackson*, 299 Ill. App. 3d 104, 112-13 (1998) (finding that evidence of the defendant's prior felony conviction was not time- barred on retrial when it was timely at the initial trial).

¶ 89    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial consistent with this opinion.

¶ 90    Reversed and remanded.

***Kozik v. Union Pacific R.R. Co.*, 2025 IL App (1st) 242219**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-9312; the Hon. Robert F. Harris, Judge, presiding. |
| **Attorneys for Appellant:** | J. Timothy Eaton, Jonathan B. Amarilio, and Adam W. Decker, of Taft Stettinius & Hollister LLP, and Thomas A. Hayden and Patrick F. Russell, of Union Pacific Railroad Corporation, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael W. Rathsack, of Park Ridge, and John P. Kujawski, Harlan Harla, and John E. Sabo, of Kujawski & Associates LLC, of O'Fallon, for appellee. |